## New Amsterdam Casualty Company v. Madison County Trust Company.

[No. 11,757.   Filed February 21, 1924.]

1. FRAUDS, STATUTE OF.—*Promise to Pay Debt of Another.—When Not Within Statute.*—Where a bonding company which had become surety for the performance of a contract by a manufacturing company with the United States government and for the repayment of an advancement made by the government to the company, the failure of the company to fulfill its contract and repay the advancement being imminent, induced a trust company to accept an appointment as receiver for such manufacturing company, by guaranteeing to repay to such trust company all money advanced by it to continue the operation of the plant and carry out the contract with the government, and to pay the trust company for its services as receiver, such agreement is not within the statute of frauds. p. 163.

2. RECEIVERS.—*Contracts with.—For Compensation.*—A contract between a trust company and a surety company which is surety for the performance of a contract with the United States government and to secure advances made by the government to an industrial plant, whereby the surety company induced the trust company to accept the receivership of the plant, and further promised to repay to the trust company all money advanced by it to continue the operation of the plant and carry out the contract with the government, also to pay it for its services as such receiver, there being no suggestion of partiality shown by the receiver to the surety company or that the trust company did not, in every particular, obey the orders of the court, is not void as against public policy.   p. 164.

3. RECEIVERS.—*Neutrality of Relations.*—A receiver is bound to maintain an attitude of strict neutrality between all the parties in interest, and any agreement which might tempt him to sacrifice or jeopardize the interests of one for the benefit of another is contrary to public policy.   p. 164.

4. PRINCIPAL AND AGENT.—*Powers of Agent.—General Agent.*—Where the general agent of a surety company, in making an effort to protect the interests of his company by promising a trust company that if it would accept the receivership of a manufacturing plant, whose contract with the government the surety company had guaranteed, it would repay to the trust company all money advanced by it to continue the operation of the plant and to fulfill said contract with the government,

and pay said trust company for its services as such receiver, a finding that such general agent was acting within the scope of his employment was justified.    p. 165.

From Hamilton Circuit Court; *Fred E. Hines*, Judge.

Action by the Madison County Trust Company against the New Amsterdam Casualty Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Charles E. Henderson* and *Shirts & Fertig*, for appellant.

*Ralph Kane, Thomas Kane* and *J. A. VanOsdol*, for appellee.

NICHOLS, J.—Appellee's complaint in this cause is in two paragraphs, one for money had and received, and the other seeking reimbursement for money paid by appellee in conducting, as receiver, the Wagner Axle Company, upon an oral promise made prior to the appointment of the receiver by a representative of appellant, to appellee, to reimburse it for money advanced and for services rendered in administering the receivership and attorney's fees and other expenses incurred therefor.

There was an answer in general denial, a trial by the court, and a finding and judgment for appellee in the sum of $2,294.64.

The error assigned is the action of the court in overruling appellant's motion for a new trial under which is presented that the decision of the court is not sustained by sufficient evidence, and that it is contrary to law.

The averments of the second paragraph of complaint, so far as here involved, and which are substantially proved are that, on or about January 22, 1918, the Wagner Axle Company was then in possession of and operating a manufacturing plant at Anderson, Indiana,

NOVEMBER TERM, 1923.     159

New Amsterdam, etc., Co. *v.* Madison, etc., Trust Co.—81 Ind. App. 157.

and, as such, it then entered into a certain contract with the United States government for the manufacture of artillery hubs and wheel fastenings.    To enable said company to proceed with production, the United States government advanced to said company on account of said contract $30,000.    To secure the United States from loss by reason of said advancement, appellant became surety for said company, and guaranteed the United States against loss by reason of the advancement aforesaid.    Said axle company was then holding possession of and claiming to be the owner of said manufacturing plant, under a certain contract with one Sansberry, by the terms of which, upon the failure of said axle company to pay certain installments of purchase money then falling due on May 1, 1918, said Sansberry would be entitled to have possession of said plant. Shortly before the maturity of said installment, it became evident to the appellant that said axle company would not be able to meet its said payment when due, was in danger of being ousted from said plant, would be thereby prevented from carrying out its contract with the government, and would make default thereon. It also became apparent to appellant that said axle company was so managing its affairs that it was in imminent danger of insolvency, and, if left to its own resources, would default on its obligation to carry out said contract, and on its obligation to repay said advancement so made by the United States.    Appellant believing its interests seriously imperiled by reason of the facts aforesaid, and that its interests would be better protected if said axle company was under receivership, and learning that one of its creditors was preparing to bring an action against it to enforce a demand in such creditor's favor approximating $8,000, appellant then requested said creditor to ask as part of the relief which it would demand, the appointment of

a receiver. Such action was commenced, and, as part of the relief sought, there was a demand for the appointment of a receiver, to which action said axle company appeared and consented to such appointment, and on April 30, 1918, said court appointed appellee as such receiver. At the earnest solicitation of appellant, appellee was induced to and did accept said appointment, took charge of the business and affairs of said axle company, and, under order of said court, proceeded to carry on the business of said axle company, until the time when its property and assets were seized in bankruptcy. Said axle company had no funds with which to carry on its manufacturing operations, and as an inducement to appellee to accept said receivership and conduct the manufacturing business of said axle company, and especially to proceed promptly with the work of producing said hubs and wheel parts, appellant solicited appellee to advance from time to time such funds as might appear necessary to carry on said manufacturing business, and promised that appellant would pay appellee for such advances and for such services and claims for services as might be allowed by said court therefor. Relying upon the promises and representations of the appellant so made as aforesaid, appellee accepted said receivership, took charge of the business of said axle company, proceeded to conduct its operations as a manufacturing plant and with the production of said artillery hubs and wheel fastenings, and to carry on the business of said axle company. In so doing, appellee employed such help and advanced such moneys as were necessary for that purpose. Appellee, prior to the bringing of this action, advanced and paid out in the due administering of said receivership $2,025.93, is legally bound for an additional sum of $670.86 and is entitled to $500 for services as receiver. The moneys so advanced and the services so

rendered were necessary in administering said receivership and in carrying on the business of said axle company. Appellee continued to discharge the duties of such receiver and to carry on the business of said axle company continuously up to and including June 17, 1918, when proceedings in bankruptcy were instituted against said axle company in the United States District Court of Indiana, and such proceedings were there had that a receiver was appointed in said bankrupt court, who took from appellee on said June 17, 1918, the possession of said plant, and all of the property and assets of said axle company. After applying to said receivership and the expenses and costs thereof, all the moneys which had come to the hands of this appellee as such receiver, there remained unpaid on the indebtedness sued on herein, including interest on money advanced, the sum of $3,254.29, which was allowed by the superior court and its payment by the bankrupt court recommended, but no funds remained after the settlement of said estate in bankruptcy which could be applied to the payment of all or any part of the claim sued on herein. Demand has been made upon appellant for payment thereof, all of which it has refused to do. That there is now due and unpaid to appellee by reason of the facts aforesaid, the sum of $3,254.29, for which it demands judgment against appellee, together with interest.

The negotiations with appellee that preceded its appointment as such receiver, and which induced appellee's acceptance of such appointment, were conducted by James H. Weyer who was the general agent of appellant. Appellant's first contention, forcefully presented, is that the promise sued on is within the statute of frauds, not being a promise in writing and being, as appellant contends, for the payment of a debt of another. It appears by the undisputed evidence that

appellant was vitally interested in the welfare of the Wagner Axle Company because of a bond for the repayment of $30,000 to the United States government upon which it was surety, that it was apparent to appellant that the company, under its own management, would lose its plant, fail to fulfill its contract with the government, make default in the repayment of the $30,000 advanced to it, and thereby compel appellant as surety to make payment of said sum. It believed that its interest would be best served if that company was kept as a going concern thereby making it the more salable. As it believed, this result could be best secured by the appointment of a receiver, and, with this end in view, it induced appellee, by its promise to advance funds necessary for future operation, to accept such receivership, and to continue the operation of said plant. With these facts before us, it seems to us that appellant's first authority cited, *Davis* v. *Patrick* (1891), 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826, is unfortunate for it. In that case Davis was interested in certain mining operations, and as an inducement to Patrick to continue to transport ore, verbally promised that if he would continue at the work, he, Davis, would be personally responsible for his pay. The issue in that case, as here, was whether the promise of Davis was original or collateral, the contention being that the promise was within the statute of frauds. But the court held that the statute does not apply to promises in respect to debts created at the instance and for the benefit of the promisor, the court saying: "But cases sometimes arise in which, though a third party is the original obligor, the primary debtor, the promisor has a personal, immediate and pecuniary interest in the transaction, and is therefore himself a party to be benefited by the performance of the promisee. In such cases the reason which underlies and which prompted this

statutory provision fails, and the courts will give effect to the promise. As said by this court in *Emerson* v. *Slater*, 22 How. 28, 43: 'Whenever the main purpose and object of the promisor is not to answer for another, but to preserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.' " We have examined other authorities cited by appellant. They are not helpful to appellant's contention. Some of them have, with others, one clear distinguishing mark in that the promise involved was to pay a debt then in existence and liquidated, while in the instant case there was at the time of the promise no debt in existence, and to which appellant's promise to pay could constitute a collateral obligation. The principle involved has been so clearly determined by Indiana authorities, that we deem it unnecessary to discuss or cite authorities from other states.

In *Board of Commissioners* v. *Cincinnati, etc., Co.* (1891), 128 Ind. 240, 12 L. R. A. 502, appellant undertook to pay for work and materials to be subsequently furnished by appellee in order to secure the completion of a building where the principal contractor had failed to carry on the work, and it was held that the promise to pay was an original promise, not collateral, and not within the statute of frauds. The court quotes from *Emerson* v. *Slater, supra,* the same principle of law as quoted above, and then says that it is possible that the language quoted states the doctrine rather too broadly, but does not inquire whether it does or not, for the reason that it was not required to decide as to the rule where the promise relates to the past, inasmuch as it was, in that case, as

here, concerned only in what related to the future at the time the promise was made. This case is followed on this principle in *Voris* v. *Star, etc., Association* (1898), 20 Ind. App. 630, 50 N. E. 779, where many authorities from other states are cited to sustain the principle. Other Indiana authorities are: *Palmer* v. *Blain* (1876), 55 Ind. 11; *Mitchell* v. *Griffin* (1877), 58 Ind. 559; *Fisher* v. *Wilmoth* (1879), 68 Ind. 449; *Anderson* v. *Spence* (1880), 72 Ind. 315, 37 Am. Rep. 162; *Elson* v. *Spraker* (1885), 100 Ind. 374. We hold that the promise involved was not within the statute of frauds.

Appellant next contends that the promise which it made. and which induced appellee to accept the receivership, advance its money and render its services 2. 3. was void as against public policy, and therefore it should be relieved therefrom. The unquestioned rule is stated that a receiver is bound to maintain an attitude of strict neutrality between all the parties in interest, and any agreement which might tempt him to sacrifice or jeopardize the interests of one for the benefit of another in interest is contrary to public policy. But it does not follow that one interested in the successful management of an industrial plant, that it may, if possible, protect itself against a loss of $30,000, may not use its influence in inducing some one competent to accept an appointment as receiver to operate the plant Nor does it follow that where, as here, there was no money available with which to operate, such an interested party may not promise such receiver to furnish money for the purpose of manufacturing material which had been purchased for use in carrying out the contract, the default of which it seeks to avoid. Nor does it follow that such money may not legitimately be furnished to keep the plant a going concern thereby making it more salable. Such acts, within themselves,

were not against public policy. They of necessity inured to the benefit of other creditors. There is not the slightest suggestion that the receiver was in any way partial to appellant, or that it did not in every particular obey the orders of the court. When its work was finished, it made a long detailed report of its operations which report was approved by the court, and compensation for the receiver's advancements and services recommended. To permit appellant under the circumstances of this case to avoid its obligations on the ground that it was against public policy would be unconscionable. We regard the case of *Polk* v. *Johnson* (1903), 160 Ind. 292, 66 N. E. 752, 98 Am. St. 274, as an authority against appellant's contention. In that case, the receiver agreed with the insolvent that in case he was appointed as such, he would serve without compensation, and the Supreme Court held that such contract was not opposed to public policy, and the receiver was compelled to serve without compensation though he found his duties more onerous than he expected. If such a prospective receiver can make a valid contract to serve without compensation, it would seem that he might with equal propriety make a contract for compensation, and for reimbursement for money which he would need to advance. Appellant's contention in this regard cannot prevail.

Finally, appellant says that, though the evidence shows that Weyer was the general agent of appellant and made the contract sued upon, it is not shown

4.  that he was acting within the scope of his authority. But, under the circumstances surrounding this case, we are not impressed with appellant's contention. As general agent, Weyer was making an effort to protect the interests of his principal because of its prospective liability on the $30,000 bond. As general agent of an insurance company, it must be

presumed, in the absence of any evidence to the contrary, that·he had authority to look after its policies, and to take such steps as were, in his judgment, necessary for the purpose of protecting it from loss thereon. *Manning* v. *Gasharie* (1866), 27 Ind. 399, 411. The court might reasonably infer, in the absence of evidence to the contrary, and there was none, from the fact that Weyer went to Anderson to look after his principal's interest with reference to the bond, that he had full authority to act in its behalf. It is apparent that this business was entrusted to the agent's care. If not, then appellant is convicted of wholly neglecting business in which it was in imminent danger of losing $30,000, for it does not appear that any one else gave the matter any attention except the vice-president of appellant, who, after he had been notified by telegram from the receiver to Weyer, the general agent, that the court had ordered the plant surrendered to Sansberry unless finances were furnished by a named date, sent an evasive letter, which was followed by a telegram from Weyer, the general agent, asking for further time to consummate a sale. From these facts and circumstances, the court found that the promise of the general agent was within his authority, and as such binding on appellant. The evidence sustains this finding.

We find no reversible error. Judgment affirmed.