Frank PRELL, Second Intervenor-Appellant,

v.

The TRUSTEES OF BAIRD AND WARNER MORTGAGE AND REALTY INVESTORS, an Illinois business trust, Robert E. Harris and Catherine L. Harris, Individually and as husband and wife, First National Bank of Louisville, United States of America, Waterfield Mortgage Company, Incorporated, Bank of . Louisville-Royal Bank and Trust Company, Citizen's Fidelity Bank and Trust Company, Kentucky Concrete Pipe Company, Devoe Paint Division of Celanese Coatings and Specialties Company and Martin Marietta Aggregates, Central Division, Martin Marietta Corporation, Chicago Title Insurance Company, Forrest Lanning, Appellees.

No. 1–778A196.

Court of Appeals of Indiana, First District.

March 21, 1979.

Rehearing Denied April 23, 1979.

---

2. The majority opinion errs in asserting this notice is to be "filed" with the recorder.

David D. Nachand, Jeffersonville, Manley N. Feinberg, Louisville, Ky., for appellant.

Theodore J. Nowacki and David R. Day, Bose & Evans, Indianapolis, Charles W. Hoodenpyl, Jr., Jeffersonville, for appellees.

ROBERTSON, Judge.

This appeal is brought by Frank Prell, as assignee of George Stapleton's interest, from a summary judgment granted by the trial court in favor of the appellees, The Trustees of Baird and Warner Mortgage and Realty Investors (Baird and Warner) and Chicago Title Insurance Co. (Chicago Title), on Prell's complaint asking for a superior vendor's lien over Baird and Warner's recorded mortgage.

We reverse and remand for further proceedings.

The trial court made findings of fact which for the most part are not in dispute and which we summarize as follows: Robert E. Harris (Harris) and George O. Stapleton (Stapleton) on December 20, 1972 entered into a partnership under the name of "The Woods" to engage in real estate development. On December 29, 1972 Harris and his wife conveyed to the partnership a 107 acre tract of land which is the subject of this lawsuit.

On April 1, 1973 Harris and Stapleton dissolved their partnership by written agreement. The agreement in pertinent part reads as follows:

## AGREEMENT

THIS AGREEMENT entered into by and between ROBERT E. HARRIS, first party and GEORGE DOUGLAS STAPLETON, second party, this 11th day of April, 1973:

WITNESSETH:

The parties hereto are trading and doing business in Clark County, Indiana under the business partnership name of THE WOODS. This partnership was formed on December ——, 1972, and was recorded December 22, 1972 in Mortgage [sic] Drawer 4, Instrument # 11056 in the Office of the Recorder of Clark County, Indiana. . . .

The parties hereto wish to dissolve the partnership known as THE WOODS . . . . This instrument is drawn explicitly for the purpose of said dissolution and establishment of rights.

1. The Woods Partnership is the owner of a 107 acre tract of land which is known as part of the Ash Estate. At the present time this property is subject to two mortgages, both to Continental Mortgage Investors of Boston, Massachusetts. In consideration of the second party conveying all of his right, title and interest in said property that he has by virtue of his being a partner in The Woods, the first party hereby agrees to pay the second party the sum of $200,000.00, said $200,000.00 to be paid as follows:

A. $75,000.00 upon the sale and the closing of the 30 acre commercial tract fronting on Allison Lane. In the event this $75,000.00 is paid prior to said closing by the first party from other sources, it is agreed that the second party will not have any payment due upon the sale of said 30 acre tract.

B. The sum of $75,000.00 upon the sale and the closing of the 20 acre commercial tract fronting on Highway 62.

C. The sum of $50,000.00 upon the sale and the closing of any other parcel presently owned by the partnership except that the condominium lots now under development may be sold without paying this said $50,000.00 until at least 80% of said lots have been sold.

D. The first party will execute to the second party a real estate mortgage which will be secondary to any and all existing mortgages, said mortgage to be in the amount of $200,000.00 and said mortgage will not bear any interest if paid on or before three years from the date thereof. The second party agrees to subordinate this mortgage to any first mortgage that the first party shall execute on said land for the purpose of developing said land or constructing buildings on said land. A clause to this effect will be contained in the mortgage from the first party to the second party.

E. As further consideration to the second party for executing this release and assignment the first party hereby agrees to indemnify and save harmless the second party from any and all claims that may arise out of the business activities of The Woods up to and including the date of this agreement. The second party agrees that we will not transact any business in the name of The Woods from this date forward and indemnifies the first party to save him harmless if the second party does so transact any business in the name of The Woods. Both parties agree that there will be a notice published in the Evening News stating that the second party is no longer a partner in The Woods. The first party will pay the charges for this publication. . .

On April 13, 1973 the former partners and their wives deeded the tract with warranty back to Harris and his wife. This deed was recorded on April 19, 1973 and the warranty excepted only mortgages of record, easements and restrictions of record and current unpaid taxes on the land.

On May 21, 1973 the agreement between Harris and Stapleton was placed on record in the Miscellaneous Drawer.

On March 8, 1974 Harris and his wife mortgaged the land in controversy to The Trustees of Baird and Warner Mortgage and Realty Investors (Baird and Warner) in the amount of $800,000. The mortgage was

recorded on March 11, 1974. Chicago Title Insurance Company did a title search without finding the dissolution agreement and gave title insurance on the land. There was no actual notice of the dissolution agreement on the part of Baird and Warner or Chicago Title.

On September 24, 1975, Baird and Warner commenced this action to recover judgment and foreclose for default on the $800,-000 note. Stapleton and his wife assigned their interest under the dissolution agreement to Frank Prell (Prell). Prell intervened in this lawsuit to have a vendor's lien declared and made superior to Baird and Warner's mortgage.

Baird and Warner and Chicago Title moved for summary judgment which was granted. The Court made the following conclusions of law:

### Conclusions of Law
#### A. GENERAL CONCLUSIONS

1. Under Indiana law and procedure, Chicago Title is subrogated to any defense which Baird & Warner has against the claim of Prell.

2. As assignee of Stapleton's interest in the Agreement between Harris and Stapleton, Prell succeeds to all the rights which Stapleton had under and by virtue of such Agreement and is subject to all defenses available to any person as against Stapleton.

#### B. PRELL'S CLAIM IS NOT A VENDOR'S LIEN

3. Under the provisions of IC 23–4–1–26, the interest of Harris and Stapleton in the Real Estate was personal property as to Harris and Stapleton.

4. No vendor's lien can arise on personal property, and therefore the Agreement between Harris and Stapleton can, as a matter of law, create no vendor's lien in any asset of the partnership, including the Real Estate.

5. Under the terms of the Agreement between Harris and Stapleton, the interests of Harris and Stapleton in both real and personal property was disposed of for a gross sum; therefore, no vendor's lien is created in any real property subject to the Agreement between Harris and Stapleton. *Old First National Bank and Trust Company of Fort Wayne v. Scheuman,* (1938) 214 Ind. 652; 12 [13] N.E.2d 551.

6. No vendor's lien can arise in Indiana where the payment of the consideration upon which such lien is based is subject to the happening of a contingency which may never occur.

7. The payment of the recited consideration by Harris to Stapleton was made expressly subject to the occurrence of a contingency, to-wit, the sale of certain portions of the Real Estate; therefore, no vendor's lien on the Real Estate was created in favor of Stapleton by the Agreement, because the obligation to pay such debt is subject to the happening of a contingency which may never occur.

#### C. EVEN IF A LIEN, PRELL'S CLAIM IS NOT ENTITLED TO PRIORITY AS TO BAIRD & WARNER

8. Baird & Warner, at the time it entered into its mortgage transaction with Harris and his wife, was a *bona fide* purchaser of its mortgage interest in the property and had no actual knowledge of the existence of the agreement between Harris and Stapleton.

9. Any actual knowledge on the part of Forrest H. Lanning is not imputable to Baird & Warner.

10. Constructive notice of the existence of a vendor's lien can be established in Indiana only by bringing suit to have the lien declared and filing a notice of lis pendens. Accordingly, the recording of the Agreement between Harris and Stapleton on May 21, 1973, in Miscellaneous Drawer No. 5, as Instrument No. 4609, is not sufficient to "put the world on notice" so as to protect any claimed vendor's lien as against subsequent purchasers. *Union State Bank v. Williams,* 348 N.E.2d 653 [683] (Ind.App.1976).

11. The legal description in the Agreement is inadequate as a matter of law to put third parties on constructive notice of the Real Estate, which is claimed to be subject to any lien created by the Agreement between Harris and Stapleton.

### D. *EVEN IF A LIEN, PRELL IS ESTOPPED TO ASSERT HIS CLAIM AS AGAINST BAIRD & WARNER*

12. Stapleton and Prell as his assignee, are estopped from claiming a vendor's lien as against Baird & Warner with respect to the Real Estate for each of the following reasons:

a. Under the express terms of the Agreement, Stapleton relied on the sale of the Real Estate to generate funds from which Stapleton was to be paid the consideration agreed upon regarding the disposition of Stapleton's business connections with Harris.

b. Under both the express terms of the warranty deed from Harris and Stapleton, doing business as "The Woods", dated April 13, 1973 and the provisions of IC 32–1–2–12, Stapleton, as one of the grantors of said deed, warranted the property to be free of all encumbrances, except those of record on the date of the conveyance. The Agreement between Harris and Stapleton was not of record on such date, and was not otherwise expressly excepted from the warranties set forth in the deed and implied by Indiana statute.

c. The warranty deed from Harris and Stapleton, doing business as "The Woods", dated April 13, 1973 acknowledges receipt of good and valuable consideration. Accordingly, Stapleton and Prell, as his assignee, are estopped from asserting as against third persons that Stapleton has not received the full consideration for which he bargained.

### E. *SPECIAL CONCLUSIONS*

13. There is no genuine issue as to any fact material to the Motions for Summary Judgment of Baird & Warner and Chicago Title which would prevent this Court from granting such Motions and entering judgment in accordance therewith.

14. The Third-Party Complaint of Baird & Warner against Chicago Title is based in part and contingent upon the claim of Prell. Because this Court concludes that Prell is not entitled to recover on his claim as against Baird & Warner, that part of Baird & Warner's Third-Party Complaint based on Prell's claim is moot.

15. This action being one for the foreclosure of various liens claimed against the Real Estate, this Court concludes that the resolution of this litigation will be expedited by the entry of final judgment as to fewer than all the claims or parties and that there is therefore no just reason for delay in entering such final judgment.

16. Notwithstanding the foregoing, the Court further finds and concludes that Prell's Motion for Summary Judgment must in any event be denied because there exist genuine issues of fact material to Prell's Motion which would prevent the entry of summary judgment in favor of Prell at this time. Such issues include at least the following:

(a) The purposes and total amounts of each of the debts and liens paid off from the proceeds of the mortgage loan including interest accrued and other expenses paid by the Plaintiff herein to Robert E. Harris and his wife in order to determine the extent to which the Plaintiff's lien is superior to any claimed lien of Frank Prell under the doctrine of subrogation.

(b) What were the respective values of the real estate subject to the Baird & Warner mortgage and that portion of the 107-acre tract referred to in the agreement between Harris and Stapleton not subject to Baird & Warner's mortgage for the purpose of determining whether and to what extent the doctrine of marshalling applies to the circumstances of this case.

Prell has raised only one allegation of a material issue of fact in the appeal and that is actual knowledge by Baird & Warner and Chicago Title of the lien claimed by Prell. This issue is waived on appeal because Prell does not include the basis of this factual dispute in the record. *Guido v. Baldwin* (1977) Ind.App., 360 N.E.2d 842, 848. Thus, this appeal rests solely on the validity of the conclusions of law reached by the trial court based on the findings of fact which we take as true. We will, however, make all inferences from these facts in favor of the appellant. *Lynch v. Indiana State Bd. of Trustees,* (1978) Ind.App., 378 N.E.2d 900.

Upon review of a grant of summary judgment, an appellate court must not only determine if there is any genuine issue of material fact, but also determine whether the law was correctly applied. *Hale v. Peabody Coal Co.,* (1976) Ind.App., 343 N.E.2d 316, 320.

As can be seen by the above conclusions of law, the trial court based its judgment on several independent legal theories: (1) Prell has no vendor's lien; (2) even if there were such a lien, there was no constructive or actual notice to Baird & Warner of the lien and therefore Baird & Warner's mortgage has priority; and (3) even if there were a vendor's lien, it was waived or estopped by Prell's assignor. In a judgment such as this, the trial court's judgment will be upheld if it is sustainable on any one legal theory supportable by the record. *Brockman v. Detroit Diesel Allison Div.,* (1977) Ind.App., 366 N.E.2d 1201, 1203, ft. 1 and cases cited therein.

The trial court's first ground for granting summary judgment against Prell's claim of a superior lien was that, as a matter of law, no vendor's lien could arise in favor of Prell's assignor. Before examining the trial court's three reasons for this conclusion, it is necessary to reevaluate the type of lien claimed by Prell. All the parties and the trial court have characterized the possible lien as a "vendor's lien". A vendor's lien has been described as:

Ordinarily a vendor of realty has an implied lien for the amount of the unpaid purchase price. A vendor's implied lien, as distinguished from a lien expressly reserved, or from the security which the vendor has while he holds the legal title under an unexecuted contract to convey, is the equitable right, which by implication is accorded to one who has conveyed the title to land without reserving a lien thereon, and has taken no security for the purchase money other than the personal obligation of the purchaser, to subject the land in equity to the payment of the purchase price. *The lien is not dependent on any agreement between the parties other than the contract to pay the purchase money,* and it is presumed to exist in all cases in which such a lien is allowed by law in the absence of a showing of an intent to the contrary. [emphasis added]

25 I.L.E. *Sales of Realty* § 122 (1960).

A vendor's lien then is *implied* from the conditions surrounding a sale of land and can be waived upon the showing of an intent contrary to holding the land as security. We are forced to note, however, that the lien claimed by Prell does not merely rest on the sale of Prell's assignor's interest in the land as a partner, but also on an express contractual promise by Harris to give a mortgage as part of the consideration to convey the interest. The partnership dissolution agreement provides in relevant part as follows:

D. *The first party will execute to the second party a real estate mortgage . . .,* said mortgage to be in the amount of $200,000.00 and said mortgage will not bear any interest if paid on or before three years from the date thereof . . . [emphasis added]

This is an express promise to give a mortgage and can create a *consensual equitable mortgage* based on this express promise. *Osborne, Handbook on the Law of Mortgages,* § 25 (2d ed. 1970). Of course, a mortgage is security given for an obligation, and in this case the debt would not arise until Prell's assignor performed his part of the bargain to give consideration to the promise. Osborne, § 26.

█ It is not hard to understand why the distinction between a vendor's lien and a consensual equitable mortgage was not made in the trial court. Both are based in equity. However, since the vendor's lien is implied, it is based on more stringent requirements. The vendor's lien can arise only in regard to the sale of real property. 25 I.L.E. *Sales of Realty* § 122. And if there is a sale of both realty and personalty for a gross sum, a vendor's lien is not available. *Old First National Bank and Trust Co. v. Scheuman,* (1938) 214 Ind. 652, 13 N.E.2d 551.

█ Since the parties and the trial court were relying solely on the concept of a vendor's lien, they labored over the issues of whether a partnership interest in real property is personalty and whether in this case there was a sale of personal and real property for a gross sum. However, we can find no authority for the proposition that such requirements apply to a consensual equitable mortgage based on an express contractual promise. The obligation for which a legal mortgage is given as security can be in exchange for a variety of things. Osborne, § 102. In other words, the sale of land is not essential for a legal mortgage, as it is in a vendor's lien. We can see no reason why a court in equity can not specifically enforce a contractual promise to give a mortgage regardless of whether there is a sale of land involved.

The third ground for the trial court's conclusion that there was no vendor's lien must be considered, however. The trial court held that there was no vendor's lien because the consideration upon which the lien is based is subject to the happening of a contingency which may never occur. That contingency is the resale of the land by Harris. We must consider this because if there is no debt due by Harris, there can be no mortgage of any type here.

█ We disagree with the trial court's interpretation of the contract that there is no debt due. Harris has explicitly promised to pay $200,000, however, the time of repayment is contingent on the resale of the land by Harris. A contract should be interpreted by a court to give legal effect rather than render it invalid. *Wiltse v. Cornell,* (1970) 146 Ind.App. 447, 256 N.E.2d 572. It has been stated as well-settled that if a debt is in existence and payment is postponed until the happening of a contingency, which does not happen, the law requires payment to be made within a reasonable time. *Stolkin v. Abrams,* (1938) 104 Ind. App. 587, 12 N.E.2d 377. It might be added that the reason for the mortgage was no doubt the indefiniteness as to when the debt would be paid. It would go against the manifest intent of the parties as evidenced in the agreement to say that no debt was due by Harris *unless* he resold the land.

We determine then that a consensual equitable mortgage based on an express contractual promise exists in this case.

As an alternative to its ruling that there was no vendor's lien created, the trial court ruled that if such a lien was created it did not have priority against the legal mortgage of Baird & Warner. The authorities do not distinguish types of equitable interests in discussing priorities with legal mortgages, (*See, e. g.,* Osborne, § 185) and therefore the distinction drawn above between a vendor's lien and a consensual equitable mortgage based on an express contractual promise is not dispositive of this issue.

█ The trial court ruled that "constructive notice of the existence of a vendor's lien can be established in Indiana only by bringing suit to have the lien declared and filing a notice of lis pendens," relying on *Union State Bank v. Williams,* (1976) Ind.App., 348 N.E.2d 683. The trial court misstated the law.

The court in *Union State Bank* states at 687:

The equitable vendor's lien is *perfected* by filing suit to have the lien judicially declared and filing appropriate lis pendens notice.

The Court went on to state that the fact of perfection is not dispositive of priority—

. . . it must appear from the record that Bank was a *bona fide* purchaser for value, in good faith, and without no-

tice, actual or constructive of Carries' [the vendor's] lien regardless of whether Carries' lien was perfected or unperfected. [cites omitted].

348 N.E.2d at 687.

Because of its interpretation of the law, the trial court ruled that filing of the dissolution agreement in the Miscellaneous Drawer was not sufficient notice. Thus, the question was not answered in the trial court as to whether, as a matter of law, the dissolution agreement was properly recorded or recordable so as to give constructive notice to Baird & Warner.

We do not rule on the issue of constructive notice, leaving it for the trial court's determination when properly raised.

■ The trial court bolstered its conclusion of law regarding priority by ruling that the description of the real estate found in the agreement was not adequate to put the mortgagee on constructive notice. Taking the agreement as a whole and recognizing that the chain of title includes the partnership, we can not rule, as a matter of law, that the description was not adequate to put Baird & Warner on inquiry notice. This assumes, of course, that constructive notice of the dissolution agreement exists, an issue we do not rule on.

■ The trial court's final reason for its ruling was that, even if there was a vendor's lien, the actions of Prell's assignor shows waiver or estoppel of the lien. A vendor's lien can be waived when the vendor knows the land will be resold, since it shows he does not intend to rely on the land as security. 77 Am.Jur.2d *Vendor & Purchaser* § 438 (1975).

■ The intentions of Prell's assignor in this case, however, are clearly stated in the partnership dissolution agreement. He wanted and received a promise to give a mortgage in exchange for conveyance of his interest. His continuing insistence on the mortgage can be reasonably inferred from the recording of the agreement one month after the conveyance. There is no waiver as a matter of law in this case.

■ The trial court found estoppel on the part of Prell's assignor by two recitations in the warranty deed conveying the land to Harris. The deed first warranted that the property was free from all encumbrances except those of record on the date of conveyance. We can find no authority, and certainly have been cited none, for the proposition that joining in conveyance by warranty deed by itself estops a person from asserting an equitable mortgage based on a contractual promise to give a mortgage. Prell's assignor carried out his part of the dissolution contract presumably in expectation that Harris would carry out his part of the bargain. Perhaps Prell's assignor could have protected himself better by reserving his mortgage interest in the deed itself or refusing to convey his interest until the mortgage was delivered, but the failure to do so by itself is not grounds for estoppel.

We must add that there is no evidence and no facts found at this stage of the proceedings that Prell's assignor, after giving complete title to Harris, stood by with knowledge of the facts while Harris mortgaged the land to Baird & Warner, who relied on the complete title. Such a set of facts could be grounds for estoppel. *Kelley v. Fisk*, (1887) 110 Ind. 552, 11 N.E. 453. The only relevant fact at this point is that Prell's assignor did record the promise to give a mortgage one month after the conveyance.

The trial court also found estoppel from asserting the lien in that the deed recited receipt of one dollar and good and valuable consideration. From this recitation the trial court found that the parties to the deed are estopped from asserting that full consideration had not been given. Appellee's brief transforms this ruling to that the parties are estopped from claiming that the purchase price is unpaid by virtue of the recitation in the deed.

■ The consideration given for the transfer of the interest in the land was the promise to pay $200,000 and the promise to give a mortgage as security for the debt. A promise is valuable consideration in contract law. 3 I.L.E. *Contracts* § 31 (1958).

The recital in the deed is inconclusive as to the nature and amount of consideration given. We do not understand how Baird & Warner could rely to its detriment on this inconclusive recital. Baird & Warner's interpretation of the ruling that a recitation of good and valuable consideration means that the full purchase price has been paid is without authority.

We, therefore, reverse, the summary judgment against Prell's claim. The remainder of the trial court's ruling is affirmed, since the denial of Prell's motion for summary judgment is not an appealable order. *Kasten v. Sims Motor Transport,* (1975) Ind.App., 333 N.E.2d 906.[1]

LOWDERMILK, J., and BUCHANAN, C. J. (participating by designation), concurs.

---

1. Although not raised as an issue by the parties, we note that it does not appear that the contract agreement "merged" into the deed. The intentions of the parties are important in making this determination, *Brown v. Ind. Dept. of Conservation,* (1967) 140 Ind.App. 638, 225 N.E.2d 187, and it is clear from the contract that the parties did not intend the deed to be the complete contractual statement. Further, the doctrine of merger does not apply where the deed constitutes only part performance of the contract and the unperformed portions of the contract are not merged into the deed. 8A *Thompson on Real Property,* § 4458 (*repl. ed.* John S. Grimes, Supp. 1978).