Homer **TOLLIVER, Acutus Industries, of Michigan, a Michigan Corporation, Defendants–Appellants,**

v.

Marte **MATHAS, Plaintiff–Appellee.**

No. 4–885 A 223.

Court of Appeals of Indiana, Fourth District.

May 23, 1989.
Rehearing Denied July 10, 1989.

David C. Jensen, Paul A. Rake, Eichhorn, Eichhorn & Link, Hammond, John W. Barce, Barce, Vann, Ryan & Howard, Fowler, for defendants-appellants.

Lowell E. Enslen, Gary K. Matthews, Enslen, Enslen & Matthews, Hammond, Thomas R. McConnell, Nolin & McConnell, Fowler, for plaintiff-appellee.

RATLIFF, Chief Judge.

## ON PETITION FOR REHEARING

In our opinion dated August 24, 1987, 512 N.E.2d 187 (1987), the majority concluded that contracts between Acutus and Mathas violated a bankruptcy statute and that the contracts were, therefore, void and violative of public policy. Mathas filed a petition for rehearing which we now grant.

## FACTS

In 1973, Marte Mathas and three (3) other individuals formed a corporation known as T and M Fabricating, Inc. (T and M) which provided welding services to the steel industry. Mathas managed T and M's daily operations and owned one third (⅓) of the outstanding shares of T and M stock. At first, T and M grew rapidly, but in 1979, the corporation began experiencing financial difficulties. On November 7, 1980, T and M filed a bankruptcy petition in the Bankruptcy Court for the Northern District of Indiana.

Acutus Industries of Michigan, Inc. (Acutus) expressed an interest in buying T and M, but agents of Acutus concluded that no deal could be negotiated as long as David Willis was a shareholder of T and M. Homer Tolliver, president of Acutus, instructed Mathas to purchase Willis's shares and told Mathas that Acutus would reimburse him for the purchase price of the shares. Mathas agreed to buy out Willis, and Tolliver agreed to reimburse Mathas by assuming Mathas's obligations under two notes. T and M's financial condition continued to deteriorate, and Mathas informed Tolliver that T and M would have to cease operation. Tolliver promised to repay Mathas for any funds Mathas expended to keep the business running, and Mathas put a total of $25,600.00 into T and M's operation. After Mathas acquired Willis's shares of T and M, T and M and Acutus agreed on a plan to purchase the assets of the corporation. The bankruptcy court approved the plan to purchase the assets of T and M, but the court was not informed of the agreements between Mathas and Acutus. After the sale, Acutus hired Mathas as a sales representative and began paying off its debts to Mathas. Within six (6) months Acutus fired Mathas and stopped payment on its debts.

On June 15, 1982, Mathas filed a complaint against Tolliver, Acutus Industries of Michigan, and Acutus Industries of Indiana alleging fraudulent breach of contract and asking for punitive damages. The case proceeded to trial, and defendants' motion for judgment on the evidence

was granted only as to Acutus Industries of Indiana. On March 15, 1985, the trial court entered judgment on the jury's verdict in favor of Mathas in the amount of $90,600.00 as compensatory damages and $95,000.00 as punitive damages. Tolliver and Acutus subsequently filed an appeal, and a majority of this court reversed the judgment of the trial court and remanded with instructions to enter judgment in favor of Tolliver and Acutus. We now grant Mathas's petition for rehearing.

### ISSUES

Although the majority opinion in this case addressed only one (1) issue, on rehearing we will address each of the issues raised in the appellants' brief.

1. Is the contract between Mathas and Tolliver enforceable?

2. As the agent of a disclosed principal, was Tolliver personally liable for breach of the contract with Mathas?

3. Did the trial court properly find Acutus Industries of Michigan, a parent corporation, liable on the contract with Mathas?

4. Did the trial court properly assess punitive damages?

### DISCUSSION AND DECISION

*Issue One*

 Tolliver and Acutus argue that the contract with Mathas was uneforceable. First, they contend that the contract lacked consideration in that no legal benefit flowed from Mathas to Tolliver or Acutus. We disagree. Consideration consists of a bargained for exchange. *Wavetek Indiana, Inc. v. K.H. Gatewood Steel Co.* (1984), Ind.App., 458 N.E.2d 265, 269, *trans. denied.* In order to constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee. *Id.* Detriment alone suffices as consideration. *Goeke v. Merchants National Bank and Trust Co.* (1984), Ind.App., 467 N.E.2d 760, 768, *trans. denied.* Furthermore, a promise constitutes valuable consideration. *Prell v. Trustees of Baird and Warner Mortgage and Realty Investors* (1979), 179 Ind.App. 642, 654, 386 N.E.2d

1221, 1229, *trans. denied.* Mathas clearly accrued a detriment in that he expended money to buy-out the shares of a partner whom Acutus perceived as an obstacle to the acquisition of T and M, and Mathas again advanced his own money to keep the business operating when corporate funds were low. The evidence also supports a conclusion that Tolliver and Acutus benefited from their deals with Mathas. As a result of Mathas's actions, an obstacle to Acutus's acquisition of T and M was eliminated, and T and M continued in operation for a longer period of time, making T and M a more valuable acquisition for Acutus. Contrary to the appellants' argument, the agreements between Mathas and Tolliver and Acutus were supported by consideration.

 Tolliver and Acutus next argue that the agreements were unenforceable because they had an illegal purpose and violated public policy. Specifically, they argue that the agreements violated bankruptcy statutes and that enforcement of the contracts would work a fraud upon T and M's creditors. We do not agree with the appellants' application of bankruptcy law in this case. 11 U.S.C. § 1129(a)(4) provided:

"The court shall confirm a plan only if all of the following requirements are met:

Any payment made or promised by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with the case, or in connection with the plan and incident to the case, has been disclosed to the court."

It is undisputed that the agreements between Mathas and Tolliver and Acutus were not disclosed to the bankruptcy court, although Acutus's plan to purchase T and M was properly filed with and subsequently accepted by that court. As a general rule, a contract made in violation of a statute is presumed void. *Hoffman v. Dunn* (1986), Ind.App., 496 N.E.2d 818, 822. However, it is only in those cases that are substantially free from doubt that we will exercise our power to declare a contract void as contravening public policy. *Ameri-*

*can Underwriters, Inc. v. Turpin* (1971), 149 Ind.App. 473, 477, 273 N.E.2d 761, 763, *trans. denied.* Courts of review hesitate to brand an "illegal" bargain void and unenforceable; we engage in a balancing test and evaluate such circumstances as the nature of the subject matter of the contract, the strength of the public policy underlying the statute, the likelihood that refusal to enforce the bargain will further the policy, and how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain. *Noble v. Alis* (1985), Ind.App., 474 N.E.2d 109, 111, *trans. denied.*

In *Weil v. Neary* (1929), 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243, the United States Supreme Court found a contract void and unenforceable because it violated a local bankruptcy rule and contravened public policy although the agreement had benefited creditors. The *Weil* court concluded that the controversy concerned the actions of both parties toward the bankruptcy court and noted that a question of public policy was presented in addition to a determination of rights between the parties. However, in *New Amsterdam Casualty Co. v. Madison County Trust Co.* (1924), 81 Ind.App. 157, 142 N.E. 727, this court enforced an agreement between the receiver for a bankrupt corporation and that corporation's surety. The oral contract provided that the receiver would advance money and provide management to keep the financially troubled company in operation, and the surety would subsequently pay the receiver for the advances and services. The surety breached the contract. When the receiver sued the surety to collect under the terms of the agreement, the surety defended on the grounds that the contract was void as against public policy. The *New Amsterdam* court concluded that to permit the surety to avoid its obligations on public policy grounds would be unconscionable. *Id.* at 165, 142 N.E. at 729. The court noted also that the receiver's advancement of money and services had inured to the benefit of the bankrupt corporation's creditors.

The factual setting of the case before us is closely akin to that in *New Amsterdam.*

In both cases, a party who was "vitally interested" in the welfare of a struggling enterprise induced a third party to advance money and provide services to ensure the continued viability of a financially troubled business. Likewise, in both cases creditors benefited from the continued operation of the business. Tolliver and Acutus induced Mathas to make substantial expenditures which inured to the benefit of Tolliver and Acutus. Without the amounts expended by Mathas in buying out David Willis, Acutus could not have acquired T and M's assets. Furthermore, T and M would have had to close down but for Mathas's cash advances for which Acutus promised reimbursement. We conclude, as did the court in *New Amsterdam*, that "[t]o permit appellant under the circumstances of this case to avoid its obligations on the ground that it was against public policy would be unconscionable." *Id.* The bankruptcy code is designed specifically to protect the rights of creditors, and Tolliver and Acutus are attempting to avoid their contractual obligations through the guise of the bankruptcy code. This we will not allow.

◼ Finally, Tolliver and Acutus argue that Mathas's attempt to enforce the contracts was an illegal attempt to obtain a double recovery for administrative claims recognizable only in the bankruptcy court. Mathas submitted a claim in the T and M bankruptcy proceeding for $22,500.00, the total amount of money he had expended (upon Tolliver's promise of reimbursement) to keep T and M operating. Mathas received payment of $15,000.00 from T and M's bankruptcy estate, and the jury heard testimony that that amount should be set-off from any payment owed by Tolliver and Acutus to Mathas. Mathas sought no additional funds from the bankruptcy estate of T and M., and the receipt of that sum from the estate in no way released Tolliver and Acutus from their liability to Mathas. Mathas's claim in this case does not constitute an attempt to obtain a double recovery.

*Issue Two*

◼ Tolliver argues that as the agent of a disclosed principal, he should bear no

personal liability for any debts owed to Mathas. In order to avoid personal liability, an agent must, at the time of contracting, disclose both the capacity in which he acts and the existence and identity of his principal. *Brown v. Owen Litho Service, Inc.* (1979), 179 Ind.App. 198, 201, 384 N.E.2d 1132, 1135. It is not sufficient that the third person have knowledge of facts and circumstances which, if followed by inquiry, would disclose the existence and identity of the principal. *Id.* Thus, unless the third person knows or the facts are such that a reasonable person would know of the principal's existence and identity, the agent must be held to be acting for an undisclosed principal and is held liable in the same manner as if he were the principal. *Id.* at 202, 384 N.E.2d at 1135. Disclosure is a question of fact to be determined by the facts and circumstances surrounding the transaction. *Id.* Mathas testified at trial that at the time he began dealing with Tolliver, he knew Tolliver was the president of Acutus and he believed Tolliver was speaking on behalf of Acutus. However, Mathas also testified as follows about his contacts with Tolliver: "We talked about it; he said, 'That was fine,' that he would pay me, after the company became his; we agreed on that.... he had agreed to pay the $65,000.00 for the stock ... he made it very clear to me that, 'I'm a man of my word. If I tell you that I'm going to do something, I'm going to do it.' " Record at 696, 719. Based upon all the evidence, we believe the jury could have concluded that Tolliver spoke on his own behalf.

▓▓▓▓▓ Tolliver argues also that because Acutus Industries of Indiana subsequently performed under the contracts, that corporation ratified Tolliver's actions and terminated Tolliver's liability as an agent. We disagree. Tolliver's personal liability flowed from his statements that *he* would pay Mathas, not from his alleged status as an agent acting without authority. We note that Acutus Industries of Indiana did not even exist as a corporation at the time Tolliver contracted with Mathas, thus Tolliver could not have been acting as that non-existent corporation's

agent. On the facts before us we can not permit Tolliver to use the doctrine of ratification to shield himself from personal liability. Furthermore, even if Tolliver had been acting as the agent of Acutus Industries of Michigan at the time he contracted with Mathas, the tortious nature of his conduct prevents him from escaping personal liability. An agent who commits a tortious act is equally liable with the principal. *Howard Dodge and Sons, Inc. v. Finn* (1979), 181 Ind.App. 209, 212, 391 N.E.2d 638, 641. The individual and the corporation are jointly liable and may properly be joined as defendants. 18B Am.Jur. *Corporations* § 2116. Mathas alleged and the jury found fraudulent misrepresentation, thus even if Tolliver had been acting solely as an agent of Acutus, his conduct rendered him personally liable to Mathas.

▓▓▓▓▓ Finally, Tolliver argues that any promise by him must be construed as a guarantee of Acutus's debts to Mathas and can not be enforced because it violates the Statute of Frauds. The Statute of Frauds provides that no action shall be brought to charge any person upon a promise to answer for the debt of another unless that promise is in writing. *See* Indiana Code section 32–2–1–1. However, where one party to an oral agreement has partially performed in reliance on the contract and it would be perpetrating a fraud upon him to allow the other party to repudiate the contract, equity removes the agreement from the Statute of Frauds and enforces the contract. 14 I.L.E. *Frauds, Statute of* § 78. To the extent that Tolliver's comments constituted a guarantee of Acutus's performance, Mathas's performance under the contract removes it from the requirements of the Statute of Frauds.

*Issue Three*

▓▓▓▓▓ Next, Tolliver and Acutus argue that Acutus, the parent corporation of Acutus Industries of Indiana (Acutus–Indiana), cannot be held liable for the debt to Mathas. Acutus argues that if there was a breach, liability should rest solely upon Acutus–Indiana which refused to pay off Mathas's loan. Generally, a parent cor-

poration is not liable for the debts of its subsidiary. *See Burger Man, Inc. v. Jordan Paper Products, Inc.* (1976), 170 Ind. App. 295, 316, 352 N.E.2d 821, 834, *trans. denied.* In fact, a parent corporation is not necessarily a party to an action involving a subsidiary. 19 Am.Jur.2d *Corporations* § 2174. However, in the case before us, the subsidiary, Acutus–Indiana, was not in existence at the time Mathas contracted with Tolliver, and it is irrelevant that Mathas received partial payment on the debt from the subsidiary. Mathas contracted with Tolliver and Acutus Industries of Michigan, and the trial court properly concluded that Acutus, the parent corporation, was liable.

*Issue Four*

 Tolliver and Acutus argue that the trial court erred in assessing punitive damages. Punitive damages are appropriate for breach of contract where there is "evidence of an independent tort of a 'reprehensible' nature, where the record indicates a state of mind evidencing bad faith, or where the actor's conduct has a quality that characterizes it as 'reprehensible' as where there is evidence of a consciousness of an intended or probable effect calculated to unlawfully injure the personal safety or property rights of others." *First Federal Savings and Loan Ass'n v. Mudgett* (1979), Ind.App., 397 N.E.2d 1002, 1008. However, punitive damages should not be awarded upon evidence that is consistent merely with the hypothesis of malice, fraud, gross negligence, or oppressiveness. *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 362. Rather, the plaintiff must present some evidence which is inconsistent with the hypothesis that the defendant's tortious conduct was the result of a mistake of fact or law, honest error of judgment, over-zealousness, mere negligence, or other similar non-iniquitous human failing. *Id.* Furthermore, the plaintiff must establish the propriety of punitive damages by clear and convincing evidence. *Id.* at 363.

██ We believe the evidence in this case adequately supports an award of puni-

tive damages. When Mathas requested that the contracts be reduced to written form, Tolliver refused, assuring Mathas that his word was as good as gold. Relying upon Tolliver's promises, Mathas repeatedly expended his own funds and incurred debt in his own name in order to facilitate Tolliver and Acutus's acquisition of T and M. After Mathas had performed fully his part of the agreement, Tolliver and Acutus stopped repaying him and terminated his employment with Acutus. Thereafter, Tolliver directed another Acutus employee to alter the company's books to disguise the payments to Mathas as sales commissions. The jury could reasonably have concluded that Tolliver and Acutus never intended to repay Mathas as promised, but that they used Mathas to finance their acquisition of his financially troubled company. As soon as Tolliver and Acutus had achieved their goal, they stopped performing under the contract and distanced themselves from Mathas by terminating his employment. The jury's verdict was well supported by the evidence.

██ Tolliver and Acutus argue also that the trial court erred in admitting evidence of their net worth. We disagree. Where plaintiff makes a prima facie showing of a right to recover punitive damages, evidence of the defendant's financial worth is admissible. *See Joseph Schlitz Brewing Co. v. Central Beverage Co.* (1977), 172 Ind.App. 81, 105, 359 N.E.2d 566, 581, *trans. denied.* As we have already concluded, the evidence supported an award of punitive damages, thus the evidence of the appellant's net worth was admissible.

 Finally, Tolliver and Acutus argue that the trial court erred in admitting evidence that Mathas had incurred attorney's fees in defending against suits by the bank which foreclosed upon the notes in Mathas's name which Tolliver and Acutus had agreed to pay. In a breach of contract action, damages, are recoverable which directly and naturally flow from the breach or wrongful conduct. *Colonial Discount Corp. v. Berkhardt* (1982), Ind.App., 435 N.E.2d 65, 67. Tolliver and Acutus could well have foreseen that Mathas would in-

cur legal expenses if payment on the notes was not properly made. The evidence of Mathas's attorney fees was properly admitted.

Upon rehearing, the decision of the trial court is affirmed.

CHEZEM, J., concurs.

MILLER, J., dissents with separate opinion.

MILLER, Judge, dissenting.

## OPINION ON PETITION FOR REHEARING

I dissent. Without duplicating the analysis of my earlier majority opinion published as *Tolliver v. Mathas* (1987), Ind.App., 512 N.E.2d 187 (C.J. Ratliff dissenting), I would again press that reliance upon *Weil v. Neary* (1929), 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243 in holding the present undisclosed contracts were unenforceable as illegal and violative of public policy is correct. *Weil* is an articulate 1929 Supreme Court decision penned by Chief Justice Taft interpreting a federal bankruptcy regulation that prohibited certain agreements which were likely, as were the agreements in the case at bar, to compromise the rights of the creditors of a bankrupt's estate.

The majority on this petition for rehearing, as did the dissent before, relies on our own 1924 decision involving a public policy concern, *but no statutory violation,* of a promise by a surety to reimburse a receivership for sums expended in supporting a failing enterprise. *New Amsterdam Casualty Co. v. Madison County Trust Co.* (1924), 81 Ind.App. 157, 142 N.E. 727. *New Amsterdam* is also distinguishable from the case at bar because the sums in question accrued to the disinterested third-party receivership and not to an inside officer and equity holder of the debtor-in-possession as in the case at bar. The *New Amsterdam* case has little applicability to the case at bar and, in light of *Weil,* is probably void.

In our earlier decision, we held in accordance with *Weil* that, while we did not condone Acutus's (Tolliver's) behavior, we could not, "however, ignore the fact the contract did violate the code and that, even though this contract might not have worked to the detriment of the creditors, other secret agreements whose disclosure [is] required are all too apt to do so." *Id.* 512 N.E.2d at 193. We were too deferential toward the supposed victim of our decision, Marte Mathas, because it is obvious the secret contracts in question were detrimental to the unsatisfied creditors of the T & M.

The majority errs in holding that Mathas's attempt to enforce the contracts was *not* an illegal attempt to obtain a double recovery for the $22,500.00 he spent to keep T & M afloat. As is obvious from the record and the majority's opinion on rehearing, Mathas submitted a claim for this amount and recieved $15,000.00 as a creditor of T & M's bankrupt estate. He had, at the same time, by an agreement not disclosed to the bankruptcy court, obligated Tolliver to pay him for this and other expenditures. Had Tolliver lived up to his end of the agreement and paid Mathas the money, Mathas would have obtained a double recovery. It is immaterial that ultimately, as a result of this present litigation, Mathas failed to exact the double dip. T & M's creditors nevertheless suffered the loss of this $15,000.00 that otherwise would have been available from the bankrupt estate. The bankruptcy trustee, had he or she known of Tolliver's and Mathas's agreement, would most certainly have denied this portion of Mathas's claim finding improper, as do we and the trial court before us, the prospect of Mathas receiving a double recovery.

In addition, the real or total amount Tolliver agreed to pay to gain control over the assets of T & M should be calculated as including the amount he agreed to pay under the reorganization plan *plus* the amounts he promised to pay Mathas, by secret agreement, for his part in facilitating the reorganization. This amount includes the $25,500.00 Tolliver promised to reimburse Mathas for investing in the failing enterprise. It also includes the *$65,000.00* Tolliver promised to reimburse Ma-

thas *for buying out David Willis, another former equity holder of T & M.* By enforcing the undisclosed agreements, we allow Mathas (who the record reveals was relieved of guaranty obligations) to receive preferential treatment over the other creditors and we allow Willis, derivatively, to receive $65,000.00 for his interest in the bankrupt enterprise.

Here, unlike in *Weil, supra,*—where our supreme court held secret agreements unenforceable as violative of public policy even though they did not inflict a detriment upon the creditors—I conclude the failure to disclose Mathas's and Tolliver's agreements had an impact upon the reorganization plan that prejudiced the rights of creditors. The agreements should not be enforced.

Therefore, I dissent.