ATTORNEYS FOR APPELLANTS

George T. Patton, Jr.
Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

Jeffrey S. Nickloy
Nickloy & Higdon
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Michael L. Einterz, Jr.
Einterz & Einterz
Zionsville, Indiana



FILED
Oct 14 2015, 9:08 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

Techna-Fit, Inc. and
Stuart Trotter,
*Appellants*,

v.

Fluid Transfer Products, Inc.,
*Appellee.*

October 14, 2015

Court of Appeals Case No.
32A05-1410-PL-462

Appeal from the Hendricks Circuit
Court

The Honorable Jeffrey V. Boles,
Judge

Cause No. 32C01-1302-PL-21

**Najam, Judge.**

## Statement of the Case

[1] Techna-Fit, Inc. filed a complaint against Fluid Transfer Products, Inc. ("FTP") alleging, among other claims, that FTP engaged in unfair competition with Techna-Fit in violation of a provision of the Lanham Act, 15 U.S.C. § 1125,

and seeking injunctive relief. FTP filed a counterclaim against Techna-Fit alleging breach of contract and a third-party claim against Stuart Trotter alleging breach of contract, breach of fiduciary duty, defamation, and deception. Techna-Fit and FTP each filed motions for partial summary judgment, which the trial court denied. Following a bench trial with the assistance of an advisory jury, the trial court entered judgment in favor of FTP on Techna-Fit's claims, its counter-claim against Techna-Fit for breach of contract, and its third-party claims against Trotter for breach of contract and breach of fiduciary duty. The trial court awarded damages to FTP as follows: $662,901.86 for Techna-Fit and Trotter's breach of contract; $125,000 for Trotter's breach of fiduciary duty; and punitive damages for Trotter's breach of fiduciary duty in the amount of $1,500,000. FTP requested attorney's fees, which the trial court awarded following a hearing. Techna-Fit filed a motion to correct error, which the trial court denied.

[2] Techna-Fit[1] now appeals and presents the following issues for our review:

1. Whether the trial court erred when it denied Techna-Fit's motion for partial summary judgment as an improper repetitive motion under Trial Rule 53.4;

2. Whether the trial court abused its discretion when it excluded certain evidence at trial;

---

[1] Techna-Fit and Trotter jointly appeal the trial court's judgment. For ease of discussion, we generally will refer to Techna-Fit and Trotter collectively as Techna-Fit.

3. Whether the trial court abused its discretion when it refused a proposed jury instruction;

4. Whether the trial court erred when it found that a release executed by Techna-Fit and FTP did not preclude FTP's breach of contract claim against Techna-Fit;

5. Whether the trial court erred when it awarded FTP $1,500,000 in punitive damages; and

6. Whether the trial court abused its discretion when it awarded FTP $146,661.43 in attorney's fees.

[3] We affirm in part and reverse in part.[2]

# Facts and Procedural History

[4] In 1996, in California, Trotter founded Techna-Fit, which manufactures and sells aftermarket brake lines, clutch lines, and other automotive products for hundreds of different vehicles. In 1999, Techna-Fit developed a system for numbering its parts, combining a series of letters and numbers to indicate a particular number of brake line or clutch line and the automobile for which the line could be used. For example, part number "MIT1025" indicates a brake line for a Mitsubishi Lancer.

[5] In 2005, Trotter and Michael Lang formed FTP, an Indiana corporation. FTP manufactured and sold products under the Techna-Fit brand name, and

---

[2] We held oral argument on August 31, 2015.

Techna-Fit gave the majority of its east coast and midwestern customers to FTP.[3] FTP used Techna-Fit's parts-numbering system. Initially, Trotter owned 80% of FTP's stock, and Lang owned the remaining 20%. Over time, Lang's ownership increased to 50%.

[6]     In 2012,

> [a] dispute arose . . . between Mr. Trotter and Mr. Lang regarding Mr. Lang's decisions and the operation of FTP. In March 2012, Mr. Trotter asked that FTP be shut down. Mr. Lang did not agree with this plan. So, on April 9, 2012, Mr. Trotter filed a lawsuit for dissolution of FTP against Mr. Lang for breach of fiduciary duties to FTP.
>
> On April 18, 2012, Mr. Trotter formed a new Indiana corporation also known as Techna-Fit, Inc., the purpose of which was to do the exact same thing as FTP and California Techna-Fit had been doing. At the time, Mr. Trotter was the sole owner of both the California and the Indiana corporations named Techna-Fit, Inc. Mr. Lang was initially unaware of the formation or existence of Mr. Trotter's new Indiana corporation.
>
> In May 2012, Techna-Fit hired FTP's employee Chris Herman to work in Techna-Fit's new Indiana location.
>
> Mr. Trotter and Mr. Lang were able to negotiate a settlement of the lawsuit Mr. Trotter had filed against FTP and Mr. Lang. They entered into a settlement agreement entitled Mutual Release and Stock Sale Agreement—or simply, "the Mutual Release." Mr. Trotter and Techna-Fit, as well as Mr. Lang and

---

[3] Trotter testified in his deposition that "we specifically set it up as a different name to sell to people [who] didn't like me[.]" Appellants' App. at 155.

FTP, were parties to this Mutual Release, which included a variety of releases and promises, as well as providing for the sale of all of Mr. Trotter's interests in FTP. The Mutual Release was executed in June 2012, and thereafter Techna-Fit and FTP proceeded with their business[es] as separate competitors.

Appellants' App. at 1352-53.

[7]     The parties' Mutual Release provided in relevant part as follows:

4. *Exchange of Customer Data*. Trotter has access to FTP's Customer Data, including the names, addresses and purchase history of all customers to which FTP has sold products, as well as the phone numbers and identity of customer-contacts for each such customer, all of which is collectively referred to herein as Customer Data. Both Trotter and FTP may continue to use the Customer Data following Closing. Trotter may provide the Customer Data to Techna-Fit for Techna-Fit's legitimate use, or to any other business entity solely owned by Trotter or Techna-Fit but Trotter (and Techna-Fit) shall not provide the Customer Data to any third party, and shall take all reasonable efforts to maintain the confidentiality of the Customer Data.

* * *

7. *Government Certification*. FTP shall not make any representations that it has current government certification for any of its products through any ongoing agreement or relationship with Techna-Fit, or otherwise represent to anyone that it has any business relationship of any kind with Techna-Fit.

8. *Non-Disparagement and Non-Interference*. . . . None of the Parties will interfere in the legitimate business of the other Parties or induce or encourage any supplier to refrain from doing business with any other Party. But nothing herein shall prevent a Party from entering into an exclusive relationship with either a supplier

or a customer, *or from engaging in legitimate competition with the other Party*.

* * *

11. *Release of Lang and FTP*.  Trotter and Techna-Fit jointly and severally release FTP and Lang from (a) all debts, duties and obligations of any kind which either FTP or Lang may have jointly or severally owed to Trotter or Techna-Fit prior to Closing, and (b) all claims, complaints and causes of action which Trotter or Techna-Fit had or may have had against FTP or Lang, either jointly or severally, that existed prior to Closing.  But, the releases herein granted shall not apply until Closing is completed, and *shall become void if this agreement is breached by FTP or Lang within 12 months following Closing*.  This release shall apply to both known and unknown debts, duties, obligations, claims, complaint and causes of action.

12. *Release of Trotter and Techna-Fit*.  FTP and Lang jointly and severally release Trotter and Techna-Fit from (a) all debts, duties and obligations of any kind which either Techna-Fit or Trotter may have jointly or severally owed to Lang or FTP prior to Closing, and (b) all claims, complaints and causes of action which Lang or FTP had or may have had against Techna-Fit or Trotter, either jointly or severally, that existed prior to Closing.  But, the releases herein granted shall not apply until Closing is completed, and *shall become void if this agreement is breached by Techna-Fit or Trotter within 12 months following Closing*.  This release shall apply to both known and unknown debts, duties, obligations, claims, complaint and causes of action.

Appellants' Addendum to Br. at Tab 3 (emphases added).

When Trotter left FTP and started Techna-Fit Indiana, Trotter did not require FTP to change its parts-numbering system, and nothing in the Mutual Release

addressed FTP's continued use of that system. Accordingly, FTP continued to use the same parts-numbering system that it had been using since its inception, and Techna-Fit continued to use the same system, as well. A short time after the two companies split, Techna-Fit received complaints from customers about what they thought were Techna-Fit products, but Techna-Fit discovered that the parts had been manufactured by FTP. Accordingly, Techna-Fit's lawyer contacted FTP's lawyer to inform FTP about the problem. Specifically, Techna-Fit informed FTP that Techna-Fit's parts-numbering system was unique to Techna-Fit and FTP's use of the same system was causing customer confusion. Techna-Fit also contacted several of FTP's distributors, including TH Motorsports, and told them to stop using the Techna-Fit name on purchase orders submitted to FTP. Over the course of several months and after several emails between Techna-Fit's and FTP's lawyers, FTP agreed to change its parts-numbering system effective February 1, 2013. In the meantime, FTP learned that: shortly after Techna-Fit and FTP began to compete against one another in 2012, Techna-Fit filled orders that had been directed to FTP but received by Techna-Fit; Techna-Fit copied and sold product designs belonging to an FTP customer without permission; and Techna-Fit filled orders requesting parts identified with FTP's new parts-numbering system.

[9] On February 7, 2013, Techna-Fit filed a complaint against FTP alleging unfair competition due to FTP's use of Techna-Fit's parts-numbering system and seeking damages and injunctive relief. FTP filed an answer and asserted affirmative defenses, a counter-claim against Techna-Fit alleging breach of

contract, and a third party complaint alleging that: Trotter and Techna-Fit Indiana[4] breached the Mutual Release; Trotter breached his fiduciary duty; and Trotter committed defamation and deception. Thereafter, Techna-Fit moved to amend its complaint to add TH Motorsports, a distributor for products made by FTP, and Lang as defendants, and the trial court granted that motion. Also in its amended complaint, Techna-Fit alleged that FTP and TH Motorsports: engaged in unfair competition in violation of the Lanham Act; committed deception "by working together to pass off [FTP]'s products as those of Techna-Fit"; and conspired "to divert profits from Techna-Fit by means of deception." Appellants' App. at 108.

[10] On October 9, 2013, FTP moved for partial summary judgment on Techna-Fit's claims alleging unfair competition, breach of contract, and conspiracy. In its brief in opposition to partial summary judgment, Techna-Fit alleged in relevant part that the "uncontested facts entitle Techna-Fit to summary judgment on the issue of FTP's liability to Techna-Fit on its Lanham Act claims."[5] *Id.* at 431. The trial court denied "the motions for partial summary judgment" following a hearing. *Id.* at 772.

---

[4] Techna-Fit, the California corporation, filed the complaint against FTP. FTP named as a third-party defendant Techna-Fit, the Indiana corporation. For ease of discussion, we will distinguish between the California and Indiana corporations only where necessary as relevant to our analysis.

[5] Indeed, under Trial Rule 56(B), "[w]hen any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party."

[11] On March 28, 2014, Techna-Fit moved for partial summary judgment on its claim alleging unfair competition in violation of the Lanham Act. Techna-Fit designated some of the same evidence it had designated in opposition to FTP's prior motion for partial summary judgment on the same claim, but Techna-Fit also designated additional evidence. On April 2, FTP moved the trial court to deny Techna-Fit's motion for partial summary judgment as an improper repetitive motion under Trial Rule 53.4. FTP asked the trial court to "deem [the] motion[] denied as of April 2, 2014." *Id.* at 1307. In particular, FTP stated as follows: "FTP recognizes that the denial under T.R. 53.4 is typically automatic. However, to avoid any lapse in FTP's right to respond to the motion and to designate materials in response, FTP requests that this Court issue an affirmative ruling on this issue." *Id.* at 1309. On April 3, the trial court denied Techna-Fit's motion for partial summary judgment "as repetitive pursuant to T.R. 53.4." Accordingly, FTP did not file a response to Techna-Fit's motion for partial summary judgment.

[12] After the trial court set the matter for a jury trial, Techna-Fit moved the court to remove the case from the jury trial docket. In particular, Techna-Fit stated that none of the parties had timely requested a jury trial and it was seeking "primarily equitable relief to stop the long-running and continuous violation of its rights. Because the relief sought sounds primarily in equity, the case, as a whole, properly belongs in front of the court rather than a jury." *Id.* at 112.2. Accordingly, the trial court set the matter for a bench trial, and the court *sua sponte* empaneled an advisory jury.

[13] Trial was held June 24-26, 2014.[6] In its opening statement, Techna-Fit stated that its

> three claims boil down to this. One, a federal claim for unfair competition for palming off these parts on the public. Secondly, a claim that FTP's behavior was deceptive and deceived the public into thinking that it was selling Techna-Fit parts when they were in fact made by FTP. And then third, this conspiracy claim that directly deals with the conspiracy between Techna-Fit and TH Motorsports to palm off these parts.

Tr. at 113-14. And FTP explained its case against Techna-Fit as follows:

> This case is about parts numbers, but that's only a small fraction of what's going on here. At its core, this case is about bullying. Bullying is the use of force, threat, or coercion to abuse, intimidate, or aggressively dominate another. . . . Stuart Trotter has actively, intentionally, maliciously plotted and schemed to destroy Michael Lang's livelihood and FTP. While he was still the owner, Techna-Fit and Trotter cut off FTP['s] supply of critical components and then they tapped into FTP's computer system and they found the customers that FTP was having backorder issues with because they couldn't supply parts. Then they called up those customers and said, "Hey, Techna-Fit will sell you those brake lines." They started a company here in Indiana just to service the customers they were taking from FTP.

*Id.* at 121.

---

[6] Lang and TH Motorsports were dismissed as defendants prior to trial. Trotter testified that Techna-Fit settled with TH Motorsports for $3,000.

[14]     The advisory jury found against Techna-Fit on its claims and in favor of FTP on all but one of its counter-claims and third-party claims, and the advisory jury awarded damages to FTP as follows:  $662,901.86 for Techna-Fit and Trotter's breach of contract; $125,000 for Trotter's breach of fiduciary duty; and $1,500,000 in punitive damages for Trotter's breach of fiduciary duty.[7]  In entering final judgment, the trial court agreed with and adopted the advisory jury's verdict and, following a hearing, the trial court also awarded FTP $146,661.43 in attorney's fees.  Techna-Fit filed a motion to correct error, which the trial court denied.  This appeal ensued.

## Discussion and Decision

### *Issue One:  Denial of Motion for Partial Summary Judgment*

[15]     Techna-Fit contends that the trial court erred when it denied its motion for partial summary judgment as an improper repetitive motion under Trial Rule 53.4.  Techna-Fit maintains that this constitutes reversible error because, had the trial court granted its motion for summary judgment on the Lanham Act violation claim, the outcome of the trial on the other claims would have been different.  In particular, Techna-Fit asserts that, if it "could have informed the advisory jury that the court had determined that Techna-Fit's complaint against FTP was justified, FTP's bullying argument would have been cast in an entirely different light."  Appellants' App. at 21.

---

[7] The advisory jury found in favor of Trotter on FTP's claim alleging defamation and deception.

[16]  Trial Rule 53.4 provides in relevant part that

> [n]o hearing shall be required upon a repetitive motion or upon motions to reconsider orders or rulings upon a motion.  Such a motion by any party or the court or such action to reconsider by the court shall not delay the trial or any proceedings in the case, or extend the time for any further required or permitted action, motion, or proceedings under these rules.

[17]  Appellate courts have repeatedly held that this rule is designed to prevent delay through the filing of repetitive motions.  *Stephens v. Irvin*, 734 N.E.2d 1133, 1134 (Ind. Ct. App. 2000), *trans. denied*.  In its motion to deny Techna-Fit's motion for partial summary judgment, FTP did not allege that the motion would cause delay.  FTP merely alleged that the motion was repetitive of Techna-Fit's response to FTP's earlier motion for partial summary judgment, and the trial court denied the motion under Trial Rule 53.4.  Notably, on appeal, FTP does not cite to any case law in support of its contention that Techna-Fit's motion for partial summary judgment was properly denied as repetitive.

[18]  Assuming, without deciding, that the trial court erred when it refused to consider Techna-Fit's motion for partial summary judgment as an improper repetitive motion, Techna-Fit has not demonstrated reversible error.  Our supreme court has set out the applicable standard of review on summary judgment as follows:

> When a trial court's ruling granting or denying summary judgment is challenged on appeal, the procedure and standard under Indiana law is clear.  Our standard of review is the same as it is for the trial court.  *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4 (Ind.

2010). The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the non-moving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the non-moving party and resolve all doubts as to the existence of a material issue against the moving party. *Plonski*, 930 N.E.2d at 5. An appellate court reviewing a challenged trial court summary judgment ruling is limited to the designated evidence before the trial court, *see* Ind. Trial Rule 56(H), but is constrained to neither the claims and arguments presented at trial nor the rationale of the trial court ruling, *see Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 790 (Ind. 2012) ("We will reverse if the law has been incorrectly applied to the facts. Otherwise, we will affirm a grant of summary judgment upon any theory supported by evidence in the record."); *Wagner v. Yates*, 912 N.E.2d 805, 811 (Ind. 2009) ("[W]e are not limited to reviewing the trial court's reasons for granting or denying summary judgment but rather we may affirm a grant of summary judgment upon any theory supported by the evidence.").

*Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013).

[19] This court has explained the Lanham Act as follows:

Trademark law is rooted in English common law, and was "largely codified" at the federal level in the Trademark Act of 1946, commonly known as the Lanham Act. *Moseley v. Secret Catalogue, Inc.*, 537 U.S. 418, 428 (2003). The Lanham Act defines a trademark, in relevant part, as "any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to

indicate the source of the goods, even if that source is unknown." 15 U.S.C.A. § 1127. . . . The Lanham Act provides the holder of a mark with a cause of action against infringers. 15 U.S.C.A. § 1125(a). *The plaintiff must prove two elements in order prevail on a claim of trademark infringement under the Lanham Act: (1) that he or she has a protectable ownership interest in the mark, and (2) that the defendant's use of the mark is likely to cause consumer confusion. Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225 (5th Cir. 2010); *see also Tana v. Dantanna's*, 611 F.3d 767 (11th Cir. 2010).

*Serenity Springs v. The LaPorte Cnty. Convention and Visitors Bureau*, 986 N.E.2d 314, 320-21 (Ind. Ct. App. 2013) (emphasis added). Further, in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 853-54 (1982), the United States Supreme Court held that

> liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or *if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement*, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit.

(Emphasis added).

[20] In support of its motion for summary judgment on its Lanham Act claim, Techna-Fit argued that FTP knew or should have known that TH Motorsports was engaged in trademark infringement and FTP is, therefore, contributorially

responsible for damages to Techna-Fit under the Lanham Act.[8] In support of that contention, Techna-Fit designated evidence that FTP was filling purchase orders from TH Motorsports that included Techna-Fit parts numbers and, in some cases, identified the parts as Techna-Fit parts. Techna-Fit also designated evidence showing that some of its customers were confused by FTP's use of Techna-Fit's parts-numbering system and that Techna-Fit had informed FTP of that confusion.

[21] On appeal, Techna-Fit contends, in effect, that the designated evidence supports only one inference and legal conclusion, namely, that FTP violated the Lanham Act. Techna-Fit reasons that FTP's continued use of the Techna-Fit trademark and parts-numbering system was not only likely to cause customer confusion but caused actual confusion among customers, which establishes FTP's liability under the Lanham Act as a matter of law.

[22] We agree with Techna-Fit that it satisfied its burden as the summary judgment movant to make a prima facie case that there were no genuine issues of material fact. But that is not the end of our inquiry. *Manley*, 992 N.E.2d at 673. Once Techna-Fit met its burden as summary judgment movant, the burden then shifted to FTP to designate evidence establishing the existence of a genuine issue of material fact. *Id.* However, because the trial court denied Techna-Fit's

---

[8] On appeal, the parties focus on the customer confusion issue and do not address the issue of whether Techna-Fit has a protectable ownership interest in its parts-numbering system.

summary judgment motion as repetitive one week after the motion was filed, FTP was denied an opportunity to respond to the motion.

[23] Nonetheless, Techna-Fit contends that it is entitled to summary judgment because "FTP chose not to designate any evidence in opposition" to the motion. Appellants' Br. at 20. That argument is not well taken. It is well-settled that a trial court is not required to grant an unopposed motion for summary judgment. *See, e.g.*, *Murphy v. Curtis*, 930 N.E.2d 1228, 1233 (Ind. Ct. App. 2010), *trans. denied*. And, more importantly, had the trial court not denied Techna-Fit's summary judgment motion as repetitive, FTP would have filed a response.[9] Techna-Fit contends that, if we were to reverse the trial court's denial of Techna-Fit's summary judgment motion, the appropriate remedy would be entry of summary judgment in its favor. But the appropriate remedy would be a remand to provide FTP an opportunity to respond to the motion. *See* Ind. Trial Rule 56(C) (providing that the nonmovant "shall have thirty (30) days after service of the [summary judgment] motion to serve a response and any opposing affidavits").

[24] We decline to remand for such proceedings. Techna-Fit's burden as the appellant is to demonstrate that the probable impact of the trial court's alleged

---

[9] Again, FTP asked the trial court to make a prompt ruling on its Trial Rule 53.4 motion to deny Techna-Fit's summary judgment motion in order "to avoid any lapse in FTP's right to respond to the motion and to designate materials in response[.]" Appellants' App. at 1309. The trial court denied Techna-Fit's summary judgment motion as repetitive one week after it was filed. Had the trial court denied FTP's Trial Rule 53.4 motion, FTP would have had three weeks to submit a response to the summary judgment motion.

error in denying its summary judgment motion as repetitive affected Techna-Fit's substantial rights. Ind. Appellate Rule 66(A). We are not persuaded that Techna-Fit has met that burden for two reasons. First, in its brief on appeal Techna-Fit does not address the fact that FTP presented evidence at trial sufficient to defeat the Lanham Act claim. If we were to reverse the trial court's judgment in favor of FTP and reinstate Techna-Fit's summary judgment motion, FTP would have thirty days to respond and it would, we presume, designate the same evidence that it used to prevail on the merits at trial. Techna-Fit makes no contention that it would be entitled to summary judgment in that circumstance. *See* App. R. 46(A)(8)(a).

[25] Second, we are not persuaded that, had Techna-Fit prevailed on its Lanham Act claim on summary judgment, FTP's "bullying argument" at trial would have been undermined such that the outcome of the trial would have been different. Appellants' Br. at 21. In support of that contention, Techna-Fit directs us to seven pages of the more than 800-page transcript. Those pages include references to Trotter being a "bully," but, contrary to Techna-Fit's assertion, only one of the cited pages, page 123, includes a suggestion that Trotter was a bully because he pursued the Lanham Act claim against FTP. Rather, FTP's lawyer supported his description of Trotter as a bully with allegations that Trotter: had taken customers away from FTP; had signed a tax return as president of FTP when he was not the president of FTP; had lied to FTP customers and told them that FTP was shutting down; had poached an FTP employee; and had "tak[en] advantage of his relationship [with Lang] to

run [Lang] into the ground." Tr. at 785. In other words, FTP made a number of claims against Trotter to support its characterization of Trotter as a bully, the least of which was a brief reference to Techna-Fit's pursuit of the Lanham Act claim. As such, any error in proceeding to trial on this issue was not an error that affected Techna-Fit's substantial rights.

[26] Again, Techna-Fit's sole contention on appeal is that it was entitled to summary judgment simply because FTP failed to file any response to the motion. Given the evidence FTP presented at trial in its defense against the Lanham Act claim, which led the advisory jury and trial court to find in favor of FTP on that claim, Techna-Fit cannot show that it would be entitled to summary judgment if that same evidence were designated in opposition to its motion. Moreover, given the minor emphasis FTP gave to the Lanham Act claim in support of the "bully" argument at trial, Techna-Fit cannot demonstrate that any error affected its substantial rights.

[27] The procedural posture of this case is unique. Techna-Fit does not allege that the trial court erred when it denied its summary judgment motion *on the merits* under Trial Rule 56 but, rather, that the court erred when it denied the motion as repetitive under Trial Rule 53.4. We hold that, under these circumstances, where FTP was denied the opportunity to file a response to the summary judgment motion, Techna-Fit's Lanham Act claim was ultimately tried on the merits, and the advisory jury and trial court found in favor of FTP on that claim, Techna-Fit cannot show that the probable impact of any error in the trial

court's denial of the summary judgment motion as repetitive affected Techna-Fit's substantial rights. App. R. 66(A).

### Issue Two: Excluded Evidence

[28] Techna-Fit contends that the trial court abused its discretion when it excluded from evidence email exchanges between the parties' attorneys. At trial, Techna-Fit sought to admit into evidence emails between Techna-Fit's and FTP's attorneys leading up to the instant lawsuit. FTP objected to the admission of those emails alleging that they should be excluded under the attorney-client privilege, and the trial court sustained that objection. Our standard of review of a trial court's exclusion of evidence is an abuse of discretion. *Speybroeck v. State*, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

[29] Indiana Code Section 34-46-3-1 provides in relevant part that, except as otherwise provided by statute, attorneys shall not be required to testify as to confidential communications made to them in the course of their professional business, or as to advice given in such cases. To invoke the attorney-client privilege, the invoking party must establish by a preponderance of the evidence (i) the existence of an attorney-client relationship and (ii) that a confidential communication was involved. *TP Orthodontics, Inc. v. Kesling*, 15 N.E.3d 985, 995 (Ind. 2014). Minimally, meeting this burden entails establishing that the communication at issue occurred in the course of an effort to obtain legal

advice or aid, on the subject of the client's rights or liabilities, from a professional legal advisor acting in his or her capacity as such. *Id.* at 995-96.

[30]     On appeal, FTP concedes that "the emails themselves are not privileged." Appellee's Br. at 12. We agree, and the trial court erred when it excluded the emails from evidence on the basis of attorney-client privilege. However, even if an evidentiary decision was an abuse of discretion, we will not reverse if the ruling constituted harmless error. *Spaulding v. Harris*, 914 N.E.2d 820, 829-30 (Ind. Ct. App. 2009), *trans. denied*. An error is harmless when the probable impact of the erroneously admitted or excluded evidence on the factfinder, in light of all the evidence presented, is sufficiently minor so as not to affect a party's substantial rights. *Crider v. Crider*, 15 N.E.3d 1042, 1061 (Ind. Ct. App. 2014), *trans. denied*; Ind. Trial Rule 61.

[31]     Here, the parties stipulated to certain facts, including the following facts relevant to the contents of some of the excluded emails:

> In September 2012, Techna-Fit, through its attorney, contacted FTP's attorney regarding FTP's continued use of the same part numbers Techna-Fit had been using since 1999. Techna-Fit argued to FTP's attorney that FTP's use of these part numbers was unfair competition under Indiana Law and suggested that FTP develop a new and different line of part numbers in order to avoid a depressing [sic] legal issue[.]

Appellants' App. at 1353. Still, on appeal, Techna-Fit contends that the exclusion of the emails, which spanned several months during 2012 and 2013, prejudiced Techna-Fit "by allowing FTP to paint them as unreasonable in

bringing suit." Appellants' Br. at 26. Techna-Fit maintains that "the emails uniquely prove that it was FTP's failure to describe its new parts-numbering system that triggered the filing of Techna-Fit's suit and not an unwillingness to work out a solution short of a suit."[10] Reply Br. at 15.

[32] In support of its assertion that FTP "paint[ed] Techna-Fit] as unreasonable in bringing suit," Techna-Fit directs us to four pages of the transcript. Appellants' Br. at 26. But our review of those four pages reveals that on only two of those pages, of the more than 800-page trial transcript, did FTP criticize Techna-Fit's motives in bringing the instant lawsuit. In opening and closing arguments, FTP briefly mentioned the suit along with numerous other contentions. But contrary to Techna-Fit's contention on appeal, the suit was not the centerpiece of FTP's arguments. When FTP's argument that Techna-Fit was unreasonable in bringing suit is considered together with the evidence at trial of Techna-Fit's other behavior leading up to the filing, we cannot say that the exclusion of the emails affected Techna-Fit's substantial rights and was reversible error. In light of all the evidence, any error was harmless. *Crider*, 15 N.E. 3d at 1061 (error harmless where probable impact in light of all the evidence is sufficiently minor as not to affect the substantial rights of the parties); Appellate Rule 66(A).

---

[10] After months of email exchanges discussing the issue, FTP implemented its new parts-numbering system on February 1, 2013. Apparently, Techna-Fit did not think that FTP had adequately explained its new system, and Techna-Fit filed its complaint on February 7.

## Issue Three:  Jury Instruction

[33]  Techna-Fit next contends that the trial court abused its discretion when it refused a proffered jury instruction which read as follows:

> In Indiana, statements made in the course of a judicial proceeding are absolutely privileged and cannot be the basis of a claim so long as they are relevant and pertinent to the litigation and bear some relation to the litigation.[] [*Chrysler Motors Corp. v. Graham*, 631 N.E.2d 7, 9 (Ind. Ct. App. 1994).]  The only exception to this rule is where a statement is so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety.[] [*Id.*]

Appellants' App. at 1357.2.  Techna-Fit maintains that it was "fundamentally prejudiced by the refusal to give the instruction."  Appellants' Br. at 33.  In particular,

> FTP's consistent theory of the case was that the filing of the lawsuit was the basis for Techna-Fit and Trotter's liability.  Without an instruction telling the jury that statements made in the course of an Indiana judicial proceeding are absolutely privileged and cannot be the basis of a claim, the "potential impact" on the jury's findings was "apparent."

*Id.* at 33-34 (citation omitted).

[34]  FTP responds that, because the jury was only advisory and the trial court was not bound, in any way, by its verdict, any abuse of discretion related to jury instructions cannot be the basis for reversible error.  *See, e.g.*, *Brundage v. Deschler*, 131 Ind. 174, 29 N.E. 921, 921 (1892).  We agree.  Indeed, where a

bench trial is held, we presume the trial judge is aware of and knows the law and considers only evidence properly before him in reaching a decision. *Conley v. State*, 972 N.E.2d 864, 873 (Ind. 2012). We hold that Techna-Fit has not demonstrated reversible error because of the refused jury instruction.

### Issue Four: Mutual Release

[35] Techna-Fit and FTP agree that "a condition precedent to [FTP's] claims is a finding that the Mutual Release agreement was breached." Appellee's Br. at 15; Reply Br. at 17. And, on appeal, Techna-Fit contends that the terms of the Mutual Release preclude FTP's breach of contract claims against Techna-Fit and Trotter and breach of fiduciary duty claim against Trotter. The Mutual Release provides in relevant part that "nothing herein shall prevent a Party . . . from engaging in legitimate competition with the other Party." Reply Br. at 17 (citing Ex. 1522). Techna-Fit insists that it did not breach the Mutual Release because its actions "fall within the meaning of 'legitimate competition,' a term not further defined in the Release." *Id.*

[36] Techna-Fit maintains that this court should review de novo the question of whether Techna-Fit breached the Mutual Release. In essence, Techna-Fit asks us to conclude that all of its conduct after Techna-Fit and FTP parted ways was "legitimate competition." Our standard of review for interpreting a contract is de novo. *Gerstbauer v. Styers*, 898 N.E.2d 369, 379 (Ind. Ct. App. 2008). The goal of contract interpretation is to ascertain and enforce the parties' intent as manifested in their contracts. *See Gregg v. Cooper*, 812 N.E.2d 210, 215 (Ind. Ct. App. 2004), *trans. denied*. To that end, we construe a contract as a whole and

consider all of the provisions of the contract, not just individual words, phrases, or paragraphs. *See id.* When a contract is clear and unambiguous, the language must be given its plain meaning. *See, e.g.*, *Tippecanoe Valley Sch. Corp. v. Landis*, 698 N.E.2d 1218, 1221 (Ind. Ct. App. 1998), *trans. denied*.

[37] Techna-Fit does not contend that the Mutual Release is ambiguous. Again, Techna-Fit merely argues that it engaged in legitimate competition. Competition is defined as "[t]he struggle for commercial advantage; the effort or action of two or more commercial interests to obtain the same business from third parties." Black's Law Dictionary 344 (10th ed. 2014). And legitimate is defined as "conforming to recognized principles or accepted rules and standards[.]" Webster's Third New Int'l Dictionary 1291 (2002). We cannot say as a matter of law that Techna-Fit engaged only in legitimate competition. Instead, we hold that whether Techna-Fit engaged in legitimate competition is a question of fact that was resolved by the trial court at trial. *See, e.g.*, *Rogier v. American Testing and Eng'g Corp.*, 734 N.E.2d 606, 621 (Ind. Ct. App. 2000) (noting whether party has breached contract is a question of fact for factfinder), *trans. denied*.

[38] The trial court entered a general judgment. Thus, without reweighing the evidence or considering witness credibility, we will affirm the trial court if the judgment is sustainable upon any theory consistent with the evidence. *Perdue Farms, Inc. v. Pryor*, 683 N.E.2d 239, 240 (Ind. 1997). At trial, FTP presented evidence in support of its claim that Techna-Fit's conduct did not constitute legitimate competition, including: shortly after Techna-Fit and FTP began to

compete against one another in 2012, Techna-Fit filled orders that had been directed to FTP but received by Techna-Fit; Techna-Fit copied and sold product designs belonging to an FTP customer without permission; and Techna-Fit filled orders requesting parts identified with FTP's new parts-numbering system. The evidence and inferences to be drawn therefrom support the trial court's factual determination and conclusion that Techna-Fit did not merely engage in legitimate competition but breached the Mutual Release. Techna-Fit's contention on appeal amounts to a request that we reweigh the evidence, which we will not do.

### Issue Five: Punitive Damages

[39]     Techna-Fit next contends that the trial court erred when it awarded $1,500,000 in punitive damages to FTP. Indiana Code Section 34-51-3-4 provides that a punitive damages award may not be more than the greater of: (1) three (3) times the amount of compensatory damages awarded in the action; or (2) fifty thousand dollars ($50,000). No Indiana court has interpreted the meaning of "the amount of compensatory damages awarded in the action." FTP asks that we interpret the statute to mean that punitive damages are limited only by the total compensatory damages awarded in the action on *all* claims. Thus, here, where the trial court entered judgment against Techna-Fit and Trotter for breach of contract and against Trotter for breach of fiduciary duty in the aggregate amount of $787,901.86, FTP maintains that the $1,500,000 award is less than three times the amount of the total compensatory damages award and, thus, within the statutory cap. Techna-Fit, on the other hand, urges us to read

the statute to limit punitive damages to three times the compensatory damages awarded for Trotter's breach of fiduciary duty.

[40] We interpret "the amount of compensatory damages awarded in the action" under Indiana Code Section 34-51-3-4 to mean the amount of compensatory damages awarded for the claim or claims for which punitive damages were requested in a party's pleadings or, if not requested in the pleadings, tried by consent. In *SJS Refractory Co., LLC v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758, 770 (Ind. Ct. App. 2011), we considered the propriety of a punitive damages award where the trial court awarded punitive damages on the plaintiff's breach of fiduciary duty claim, but the plaintiff had not requested punitive damages on that claim, and the plaintiff had stated during trial that it was seeking punitive damages only on its tortious interference with a contract claim. On appeal, we held as follows:

> [T]he Appellants argue that the trial court erred in awarding Empire punitive damages on the breach of fiduciary duty claim where Empire did not request punitive damages on this claim and stated during trial that the only punitive damages claim it was seeking was for tortious interference with a contract. Specifically, at trial, Empire's counsel told the court that, "Just to make it clear, the punitive damages claim is the assertion that Mr. Johnson, Mr. Salwolke and SJS tortiously interfered with the contract of Bill Sale." Transcript at 1569. The trial court entered judgment in favor of the Appellants "on Empire's claims for wrongful interference with business relationships." Appellants' Appendix at 97.
>
> We addressed a similar issue in *1st Source Bank v. Rea*, 559 N.E.2d 381 (Ind. Ct. App. 1990), *trans. denied*, where the bank challenged

the trial court's award of punitive damages. We reversed, noting that the plaintiffs had not requested punitive damages in their counterclaim and that the trial court had not granted a motion to amend the pleadings to conform to the evidence. *Id.* at 388-89. *See also* Ind. Trial Rule 15(B) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

Similarly, here, the complaint did not contain a request for punitive damages on the breach of fiduciary duty claim, and no request for punitive damages was made at trial on this claim. Rather, Empire's counsel specifically stated that the request for punitive damages was on the tortious interference with a contract claim, and judgment was entered in Appellants' favor on this claim. Further, the trial court did not grant a motion to amend the pleadings to conform to the evidence, and given that Empire's counsel made clear that the punitive damages claim was "the assertion that Mr. Johnson, Mr. Salwolke and SJS tortiously interfered with the contract of Bill Sale," we cannot find that this issue was raised by consent of the parties per Indiana Trial Rule 15(B). Transcript at 1569. Here, as in *1st Source Bank*, the trial court erred in awarding punitive damages on the breach of fiduciary duty claim. We therefore reverse the award of punitive damages.

*Id.*

[41] Likewise, here, in its counterclaim and third-party complaint, FTP did not request punitive damages for its breach of contract claims against Techna-Fit

and Trotter. Both in the pleadings and at trial, FTP requested punitive[11]
damages only for its breach of fiduciary duty and defamation and deception
claims against Trotter.[12] And the advisory jury was instructed accordingly.
There is no indication that this issue was tried by consent of the parties under
Indiana Trial Rule 15(B). *See SJS Refractory Co.*, 952 N.E.2d at 770. And in its
verdict, the advisory jury awarded punitive damages only for Trotter's breach of
fiduciary duty.[13] Thus, FTP is only entitled to, and was awarded, punitive
damages on its breach of fiduciary duty claim.

[42] Still, FTP contends that the statutory cap should be based upon the aggregate
amount of compensatory damages awarded on both the breach of contract and
breach of fiduciary duty claims. But because FTP is only entitled to punitive
damages for the breach of fiduciary duty, it follows that only those
compensatory damages which are the predicate for the punitive damages claim
can be used to calculate the statutory cap. Otherwise, the statutory cap on the
punitive damages award would be based in part on claims for which FTP did
not seek punitive damages, contrary to the rule in *SJS Refractory* that punitive

---

[11] FTP requested "treble" damages for its defamation and deception claims. Appellants' App. at 54-55.

[12] On appeal, FTP contends that Techna-Fit's "entire course of conduct" constituted an "independent tort" that entitles FTP to punitive damages on its breach of contract claim against Techna-Fit. In support of that contention, FTP cites *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 981 (Ind. 1993). But, again, no such claim for punitive damages against Techna-Fit was pleaded or litigated, and we need not address that contention. *See SJS Refractory Co.*, 952 N.E.2d at 770.

[13] We note that Trotter's breach of fiduciary duty occurred while he was part-owner of FTP, and the breach of contract occurred after the Mutual Release was executed. In other words, the factual bases for the breaches are unrelated.

damages must arise from the underlying claim for which those damages are sought.

[43] As discussed above, FTP sought punitive damages only on its breach of fiduciary duty claim against Trotter, and, thus, as a matter of pleading and practice, punitive damages are limited to a multiple of the compensatory damages awarded on the breach of fiduciary duty claim. *SJS Refractory*, 952 N.E.2d at 770. But our holding is also consistent with our legislature's unambiguous intent to limit the magnitude of punitive damages. *See Andrews v. Mor/Ryde Int'l, Inc.*, 10 N.E.3d 502, 504-05 (Ind. 2014) (describing "sweeping limitations" on punitive damages enacted in 1995 to discourage and limit punitive damages awards). The cardinal rule of statutory construction is to determine and give effect to the intent of the legislature. *See McCabe v. Comm'r, Ind. Dep't of Ins.*, 949 N.E.2d 816, 819 (Ind. 2011). In order to effectuate that intent, there must be a nexus between the compensatory damages award and the statutory punitive damages cap. To include both the underlying and the unrelated compensatory damages in the calculation of the statutory cap would expand rather than limit punitive damages, contrary to the clear legislative intent.

[44] We hold that FTP is not entitled to punitive damages on its breach of contract claims and that the punitive damages award is limited to three times the compensatory damages awarded for Trotter's breach of fiduciary duty. I.C. § 34-51-3-4. Because FTP was awarded $125,000 for his breach of fiduciary duty,

we reverse the punitive damages award and order Trotter to pay punitive damages in the amount of $375,000.[14]

### Issue Six: Attorney's Fees

[45] Finally, Techna-Fit contends that the trial court abused its discretion when it awarded FTP $146,661.43 in attorney's fees. The award or denial of attorney's fees is "in the exercise of a sound discretion, and in the absence of an affirmative showing of error or abuse of discretion we must affirm [the trial court's] order." *Malachowski v. Bank One, Indpls., N.A.*, 682 N.E.2d 530, 533 (Ind. 1997) (quoting *Zaring v. Zaring*, 219 Ind. 514, 39 N.E.2d 734, 737 (1942)). Indiana adheres to the American rule that, in general, a party must pay his own attorney's fees absent an agreement between the parties, a statute, or other rule to the contrary. *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 458 (Ind. 2012).

[46] The Mutual Release does not include a fee-shifting clause. Still, FTP contends that it is entitled to attorney's fees as consequential damages because such fees were foreseeable in light of Techna-Fit and Trotter's breach of the contract. In support of that contention, FTP cites *Tolliver v. Mathas*, 538 N.E.2d 971, 977 (Ind. Ct. App. 1989), *trans. denied*, where we held that, "[i]n a breach of contract action, damages are recoverable which directly and naturally flow from the

---

[14] To the extent Techna-Fit contends that both the compensatory damages award and the punitive damages award were based on speculation, that contention amounts to a request that we reweigh the evidence, which we will not do.

breach or wrongful conduct." But this court has subsequently rejected the *Tolliver* holding. In *Thor Electric, Inc. v. Oberle & Associates, Inc.*, 741 N.E.2d 373, 382-83 (Ind. Ct. App. 2000), *disapproved on other grounds by Inman v. State Farm Mut. Auto Ins. Co.*, 981 N.E.2d 1202, 1205 (Ind. 2012), where the trial court had awarded attorney's fees for a breach of contract, we stated as follows:

> The *Tolliver* court held that the trial court properly admitted evidence of attorney fees incurred in a breach of contract action. In so doing, the *Tolliver* court stated that legal expenses were a reasonably foreseeable cost resulting from the breach and thus were recoverable as consequential damages. However, *this conclusion is against the weight of authority in Indiana*.
>
> Our courts have repeatedly and overwhelmingly held that attorney fees are not recoverable absent an agreement, statute, or rule. *See Indiana Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.,* 590 N.E.2d 1085, 1093 (Ind. Ct. App. 1992) (concluding that attorney fees are not recoverable as consequential damages in a breach of contract action despite the argument that such fees flow naturally from the breach and are reasonably foreseeable); *see also Kikkert v. Krumm,* 474 N.E.2d 503, 504-05 (Ind. 1985) (stating that "[t]he general rule requires each party to the litigation to pay his own attorney fees. Attorney fees are not allowable in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing thereof[.]"); *Trotcky v. Van Sickle,* 227 Ind. 441, 445, 85 N.E.2d 638, 640 (1949) ("'Attorney's fees are not allowable in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing the allowance thereof; and it has been held that the rule applies equally in courts of law and in courts of equity.'" (citation omitted)); *Depeyster v. Town of Santa Claus,* 729 N.E.2d 183, 190 (Ind. Ct. App. 2000) (stating that "Indiana adheres to the American Rule, which requires parties in most instances to pay their own attorney fees absent a statute, rule, or

agreement to the contrary”); . . . *Shumate v. Lycan,* 675 N.E.2d
749, 754 (Ind. Ct. App. 1997) (concluding that “attorney fees and
costs should not be awarded for the breach of an agreement not
to sue unless the agreement expressly provides for that remedy,
or such an award is permitted by statute or court rule”), *trans.
denied; Kokomo Med. Arts Bldg. P'ship v. William Hutchens &
Assocs.,* 566 N.E.2d 1093, 1096 (Ind. Ct. App. 1991) (*holding that,
despite appellee's argument that attorney fees were consequential
damages, in the absence of a contract provision or applicable statute, the
award of attorney fees was error*).  Thor fails to cite to a contract
provision or applicable statute authorizing the award of attorney
fees, and our review of the record and existing law reveals none.
Therefore, we conclude that the trial court erred in awarding
attorney fees to Thor.[15]

(Emphasis added).  We agree that the holding in *Tolliver* is an outlier and
against the weight of authority in Indiana, and we hold that FTP is not entitled
to attorney's fees for Techna-Fit and Trotter's breach of contract.

[47] Still, FTP contends that it is entitled to attorney's fees under Indiana Code
Section 34-52-1-1(b) because of the evidence of Techna-Fit and Trotter's “bad

---

[15] In a footnote, the *Thor* court stated further:

> While we recognize, strictly speaking, that attorney fees would be a foreseeable cost arising naturally and directly out of the breach, we may not ignore the clear precedent of our supreme court.  *See Indiana Ins. Co.*, 590 N.E.2d at 1093.  Indeed, in entering a contract, a party may negotiate for recovery of attorney fees in the event of breach.  Thus, we see no need to expand the scope of consequential damages to cover such costs when neither the contract nor existing law provides recovery.

741 N.E.2d at 383 n.6.

faith in trying to put [FTP] out of business." Tr. at 807. Indiana Code Section 34-52-1-1(b) provides as follows:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> > (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
> >
> > (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
> >
> > (3) *litigated the action in bad faith*.

(Emphasis added). Pursuant to this statute, bad faith is demonstrated where the "party presenting the claim is affirmatively operating with furtive design or ill will." *SJS Refractory*, 952 N.E.2d at 770. Further, "in order to constitute bad faith under the statute, the conduct must be 'vexatious and oppressive in the extreme.' The reason for such a strict standard is that the nature of an attorney['s] fee award under the bad faith exception is punitive[.]" *Neu v. Gibson*, 968 N.E.2d 262, 279 (Ind. Ct. App. 2012) (quoting *St. Joseph's College v. Morrison, Inc.*, 158 Ind. App. 272, 302 N.E.2d 865, 871 (1973)), *trans. denied*.

[48] An award under Indiana Code Section 34-52-1-1 is afforded a multistep review. *SJS Refractory*, 952 N.E.2d at 770. First, we review the trial court's findings of fact under a clearly erroneous standard, and then we review the trial court's legal conclusions *de novo*. *Id*. Finally, we review the trial court's decision to

award attorney's fees and the amount thereof under an abuse of discretion standard. *Id.* at 770-71.

[49] The trial court did not enter findings and conclusions in support of the attorney's fee award. Instead, the court adopted FTP's "hearing brief" in support of its request for attorney's fees under the bad faith prong of Indiana Code Section 34-52-1-1. In that brief, FTP argued in relevant part that it was entitled to attorney's fees because Techna-Fit and Trotter "pursued their action with 'furtive design,' 'ill will' and 'for oppressive reasons'—namely, trying to run [FTP] out of business." Appellants' App. at 1368. However, neither in its "hearing brief" nor in its brief on appeal did FTP direct us to any evidence in the record to support those assertions.[16] And, to the extent FTP contends that the evidence of Techna-Fit's conduct leading up to the instant lawsuit bears on the question of attorney's fees under Indiana Code Section 34-52-1-1(b)(3), FTP is mistaken. Indiana Code Section 34-52-1-1(b)(3) codifies the common law bad faith exception to the American rule. And in *Kikkert*, our supreme court held in relevant part that the common law bad faith exception to the American rule does not apply where the "allegedly obdurate behavior occurred before the lawsuit was filed." 474 N.E.2d at 505. Likewise, the statute provides that the action must be *litigated* in bad faith, which means that only conduct in the

---

[16] While FTP briefly argued at trial that Trotter was a bully for bringing this lawsuit, FTP does not direct us to any evidence to support that argument. And argument is not evidence.

course of the litigation is relevant to the question of attorney's fees.[17] I.C. § 34-52-1-1(b)(3); *see, e.g.*, *SJS Refractory*, 952 N.E.2d at 771 (affirming attorney's fee award where "[d]efendant[s'] litigation strategy was to lie and cover up their conduct, and the record and the findings in th[e] case [we]re replete with examples of this litigation strategy."). Without evidence to support the trial court's conclusion that Techna-Fit litigated this action in bad faith, the court's conclusion is clearly erroneous. We hold that the trial court erred when it awarded FTP attorney's fees, and we reverse the attorney's fee award.

## *Conclusion*

[50] Techna-Fit has not demonstrated that it was entitled to summary judgment on its Lanham Act claim. The trial court's exclusion of certain evidence at trial was not reversible error. The trial court's refusal to proffer a proposed instruction to the advisory jury was not reversible error. We will not reweigh the evidence or reassess the credibility of witnesses with respect to the breach of contract claims. The trial court erred when it awarded FTP $1,500,000 in punitive damages. We reverse that award and order Trotter to pay $375,000 in punitive damages for his breach of fiduciary duty. And the trial court erred when it awarded FTP attorney's fees.[18]

---

[17] Indeed, the statute differentiates between *bringing* a claim (subsection (b)(1)) and *litigating* a claim (subsection (b)(3)). And FTP makes no contention that Techna-Fit brought the action on a claim that is frivolous, unreasonable, or groundless.

[18] FTP requests appellate attorney's fees. Because we hold that the trial court erred when it awarded $1,500,000 in punitive damages and when it awarded attorney's fees, we deny FTP's request.

Affirmed in part and reversed in part.


Kirsch, J., and Barnes, J., concur.