## MEMORANDUM DECISION



FILED

Jun 30 2016, 8:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT

Michael R. Cochren
Princeton, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of M.W. and L.W., minor children, and their Mother, W.W.,

*Appellant-Respondent*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

June 30, 2016

Court of Appeals Case No.
26A04-1510-JT-1808

Appeal from the Gibson Circuit Court

The Honorable Jeffrey F. Meade, Judge.

Trial Court Cause Nos.
26C01-1412-JT-8
26C01-1412-JT-9

**Mathias, Judge.**

W.W.'s ("Mother") parental rights were terminated to her minor children, M.W. and L.W. in Gibson Circuit Court.[1] Mother appeals the involuntary termination of her parental rights and presents two issues, which we restate as:

I. Whether the evidence was sufficient to support the trial court's termination order; and,

II. Whether the trial court abused its discretion in admitting Mother's positive alcohol screens into evidence.[2]

We affirm.

## Facts and Procedural History

In June 2013, two-year-old, L.W. and one-year-old, M.W.[3] ("Children") were removed from their Mother's care and placed with Mother's mother ("Grandmother") after several prior incidents occurred involving Mother's use of alcohol or drugs.[4] On May 21, 2013, Mother called the police to report an incident of people acting inappropriately in her home. When the officers arrived, they determined that Mother was hallucinating because she was under

---

[1] The trial court also terminated the parental rights of Children's Father, J.M., who does not participate in this appeal.

[2] Mother phrases this as a due process argument in her brief, but we find her argument more akin to one that is evidentiary in nature.

[3] M.W. was born THC-positive. DCS then initiated a CHINS case after Mother later tested positive for methamphetamines. DCS provided Mother with substance abuses services, and the case closed in July 2012.

[4] Children were later moved to a foster care placement in February 2014, after the trial court determined that Grandmother was not able to meet the Children's academic and medical needs.

the influence of drugs.[5] The incident was reported to the Indiana Department of Child Services ("DCS"). Ten days later, DCS received another report that Mother returned to Grandmother's home intoxicated and was acting erratically. Mother was throwing things, and then, while holding L.W., assaulted Grandmother, and fell to the ground. Grandmother asked Mother to leave, but Mother later returned to Grandmother's home after breaking the back door window with her hand, which required immediate medical treatment. The Children were present during both of these incidents, and Grandmother's neighbor called the police.

[4] On June 4, 2013, DCS filed a child in need of services ("CHINS") petition for L.W. and M.W. Shortly thereafter, Mother left Indiana, and she was reported to be staying in Tennessee, Florida, and Georgia between June 6, 2013 and November 13, 2013. During that time, Mother failed to appear for five hearings related to the CHINS matters. After first returning to Indiana, Mother stayed at a homeless shelter for about four months.

[5] A CHINS fact-finding hearing was held on November 20, 2013, at which Mother admitted that due to her continuing drug abuse issues, she was unable to provide the supervision and care needed to ensure Children's safety. She also agreed to participate in the following services: random drug screens, substance

---

[5] Mother claimed that she was experiencing hallucinations from prescription medication, while the State contends that Mother was under the influence of methamphetamine. The record reflects that Mother tested positive for amphetamines, methamphetamines, and opiates, specifically, oxycodone and hydrocodone in June 2013.

abuse evaluation and treatment, supervised visitation, and a parent aide program. On February 6, 2014, the court entered its adjudication order and on February 24, 2014, entered its dispositional order ordering Mother to comply with the agreed services.

[6] After leaving the homeless shelter, between January and March 2014, Mother moved around and was inconsistent in participating in services. However, between March and June 2014, Mother improved her compliance with services and was sober for eight weeks. Around the same time, Mother began substance abuse treatment and regularly submitted to drug tests, so Mother's visitation changed to monitored from supervised. Mother also obtained a two-bedroom apartment, where she was able to visit with Children.[6]

[7] In October 2014, Mother missed numerous substance abuse treatment sessions and drug screens and DCS reinstated supervised visitation once again. Between September and December 2014, Mother participated in a parent aide program at Ireland Home Based Services to help her obtain employment and improve parenting skills but she was ultimately unable to achieve these goals. Also in December 2014, Mother completed substance abuse treatment but still struggled with binge drinking on weekends. On December 18, 2014, DCS filed a petition to terminate Mother's parental rights.

---

[6] Living in this apartment is contingent-upon Mother living with Children. Mother could be evicted for failure to comply with the terms of the subsidized housing agreement.

[8]     In early 2015, Mother testified positive for alcohol on at least four occasions.[7] In January 2015, DCS held a family team meeting to discuss relapse prevention with Mother. At the meeting, Mother indicated that she was participating in a support group but did not provide DCS with the documentation that they requested. At this time, Mother still had not found regular employment even with the parent aide services. Mother babysat, walked dogs, and scrapped metal to support herself.

[9]     The trial court held evidentiary hearings on the termination petition on March 3, 2015, April 1, 2015, June 3, 2015, and June 15, 2015. At the June 3 hearing, family case manager at Ireland Home Based Services, Seth Clark ("Clark") testified that Mother made slow to minimal progress on the outlined goals. Clark provided Mother with parent aide services and conducted the supervised visitation with Children. He was concerned that Mother was still unable to find stable employment[8] and indicated that even though she completed the substance abuse program, she still struggled with binge drinking on weekends. Melani Catt ("Catt"), regional manager at Hi-Tech Investigative[9] testified that Mother tested positive for alcohol at least four times in early 2015. Catt explained that on one occasion when she came to Mother's home to conduct

---

[7] Before each drug test, Mother reported that she was taking Mucinex, an over-the-counter cold and flu medication. She also indicated that she mixed vanilla extract in her milk several times per week.

[8] Mother testified at the termination hearing that on a good week she would bring home approximately $200.

[9] Hi-Tech Investigative contracts with companies and organizations to conduct drug screens.

the drug screen that Mother appeared under the influence and indicated to Catt that she did not want to take the test because she would test positive for alcohol.

[10] During the June 15 hearing, the Children's court-appointed special advocate ("CASA"), Sondra Segura ("Segura"), testified that termination of Mother's parental rights was in the best interests of Children due to Mother's continued alcohol abuse and her inability to keep a stable job. Segura explained that Children both have special needs related to speech delay. Children also have had issues with recurring staph-infected boils that need continuous medical monitoring and treatment. Segura reported that Children's speech has improved and they are less withdrawn and more outgoing in their foster home. DCS family case manager, Marcia Loving-Wilkerson ("Loving-Wilkerson"), testified that Mother is unable to maintain sobriety and has had multiple relapses within the past two years. Loving-Wilkerson also expressed concern with Mother's unstable housing and employment and several domestic violence incidents that occurred throughout the CHINS and termination proceedings.[10]

[11] On August 31, 2015, the trial court entered an order terminating Mother's parental rights. Mother now appeals.

---

[10] On June 7, 2014, just one week from the last termination hearing, Mother was involved in a domestic violence altercation with her boyfriend. Mother admitted to the police that she was drinking before this incident occurred, but no charges were filed against either individual.

## Sufficiency of the Evidence

[12]   Mother argues that the trial court's judgment terminating her parental rights is not supported by sufficient evidence. "The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted). Indeed, parental interests "must be subordinated to the child's interests" in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009).

[13]   Indiana Code section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:

> (2) The petition must allege:
>
> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the wellbeing of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[14] However, Indiana Code section 4(b)(2)(B) is written in the disjunctive; therefore, the trial court is required to find that only one prong of subsection (2)(B) has been established by clear and convincing evidence. *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010). DCS must prove "each and every element" by clear and convincing evidence. *G.Y.*, 904 N.E.2d at 1261; Ind. Code § 31-37-14-2. Clear and convincing evidence need not establish that the continued custody of the parents is wholly inadequate for the childs very survival. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Rather, it is sufficient to show by clear and convincing evidence that the child's emotional development and physical development are put at risk by the parent's custody. *Id*. If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[15] The trial court must enter findings of fact to support its conclusions. Ind. Code § 31-35-2-8(c). Moreover,

> We do not reweigh the evidence or determine the credibility of witnesses, but consider only the evidence that supports the judgment and the reasonable inferences to be drawn from the evidence. We confine our review to two steps: whether the evidence clearly and convincingly supports the findings, and then whether the findings clearly and convincingly support the judgment.

*In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014).

Mother only challenges that DCS did not present sufficient evidence to support that a reasonable probability exists that the conditions that resulted in the children's removal or the reasons for placement outside the home of the parents will not be remedied.[11] Specifically, Mother contends that she has completed substance abuse counseling, complied with services and visitation, and is employed. Thus, she argues that she has remedied the conditions which led to the removal of children.

When making a determination as to whether a reasonable probability exists that the conditions resulting in a child's removal or continued placement outside of a parent's care will not be remedied, the trial court must judge a parent's fitness to care for her child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156-57 (Ind. Ct. App. 2013). The trial court is also required to consider the parent's habitual patterns of conduct in order to determine the probability of future neglect or deprivation of the child. *Id.* at 1157. The trial court may consider evidence of a parent's prior history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* The trial court may consider the services offered to the parent by DCS and the parent's response to those services as evidence of whether

---

[11] Mother asserts in the "Summary of Argument" section of her brief that DCS failed to present sufficient evidence that termination is in the best interests of Children. However, this argument was not developed in the "Argument" section of her brief and is therefore waived for failure to make a cogent argument. See Ind. Appellate Rule 46(A)(8)(a).

conditions will be remedied. *Id.* DCS is not required to provide evidence ruling out all possibilities of change. *Id.* Instead, it needs to establish only that a "reasonable probability" exists that the parent's behavior will not change. *Id.*

[18] In this situation, Children were removed from Mother's care because she was hallucinating from drug use, intoxicated, and acting erratically and violently toward Grandmother. These incidents all occurred while Children were present in the home.

[19] Despite completing substance abuse counseling, Mother continues to abuse alcohol. DCS presented evidence that Mother tested positive for alcohol at least four times in early 2015 and that Mother was involved in a domestic violence altercation in June 2015, where she admitted to police that she had been drinking beforehand. Further, family case managers Clark and Loving-Wilkerson testified that Mother has difficulty maintaining sobriety.

[20] DCS also presented evidence that Mother does not have regular employment and her housing is contingent upon Mother living with Children. Although Mother was provided parent aide services to help her find a job, she was unable to obtain stable employment. Instead, Mother babysits and walks dogs a couple of times a week in addition to scrapping metal. Mother stated that on a good week she makes about $200. In addition, Mother was homeless for several months after she returned to Indiana following a six-month absence spent in various states. Now, Mother has a two-bedroom apartment but could be evicted

if she does not have dependents living with her. This puts Mother at risk of being homeless once again.

[21] The record reflects that Mother participated most of the time with visitation and services in the termination stage of the proceedings, in contrast to Mother's absence for the first six months of the CHINS case, when she participated in neither visitation nor services. While Mother never missed a visit with Children after she retuned to Indiana, Mother failed to attend numerous scheduled drug screens and substance abuse counseling sessions. Further, after Mother failed several drug screens, DCS met with her to discuss relapse prevention. Mother stated that she was in a support group, but never provided proof of participation to DCS as requested. Then in June 2015, Mother admitted to using alcohol after a domestic violence altercation with her boyfriend.

[22] Based on these facts and circumstances, the trial court did not clearly err when it concluded that the conditions that led to Children's removal from Mother's care would not be remedied. Although Mother made an effort to comply with services, it is clear that she still struggles with addiction, does not have regular employment, and ultimately has not remedied the conditions that led to Children's removal. It is well within the trial court's discretion to consider evidence of a parent's prior history of neglect, failure to provide support, and lack of adequate housing and employment when determining if the conditions that led to removal were remedied. *See A.D.S.,* 987 N.E.2d at 1157. Accordingly, Mother's argument is simply a request that we reweigh the evidence, which is not our role as an appellate court.

**Admission of Mother's Alcohol Screens**

Further, Mother argues that the trial court abused its discretion in admitting evidence of Mother's positive alcohol screens ("ETG tests"). Specifically, Mother argues that the ETG tests were unreliable due to possible ethanol exposure in the lab and because Hi-Tech's medical review officer would not sign off as to the test's reliability.

The decision to admit or exclude evidence lies within the sound discretion of the trial court, and we will not disturb the trial court's decision absent a showing of an abuse of that discretion. *Weigel v. Weigel*, 24 N.E.3d 1007, 1010 (Ind. Ct. App. 2015). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court. *Speybroeck v. State*, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007).

Even if an evidentiary decision is an abuse of discretion, we will not reverse if the ruling constituted harmless error. *Techna-Fit, Inc. v. Fluid Transfer Prods., Inc.*, 45 N.E.3d 399, 411 (Ind. Ct App. 2015) (citing *Spaulding v. Harris*, 914 N.E.2d 820, 829-30 (Ind. Ct. App. 2009), *trans. denied*).

Hi-Tech regional manager Catt stated that the ETG tests have the potential to be unreliable if environmental exposure to ethanol or ethanol containing products occurs. Catt testified that no contaminants were in the Hi-Tech testing facility, and Mother failed to present evidence that contamination occurred here. Catt also explained that Hi-Tech's medical review officer would not sign off on ETG tests because everyone metabolizes alcohol differently and has

different "levels." June 3, 2015 Tr. p. 88-89. However, Catt further testified that the medical review officers find the ETG tests to be accurate. Tr. p. 88. This evidence does not establish that the ETG test results were unreliable. Accordingly, the trial court did not abuse its discretion in admitting Mother's positive alcohol screens.

[27] Even if the trial court erred in admitting and relying on Mother's positive alcohol screens, any error was harmless. Independent review of the record reflects evidence of Mother's continuous struggle with substance abuse. Family case manager Clark indicated that throughout the time that he provided Mother with services, she continued to struggle with binge drinking on the weekends. In January 2015, Catt testified that prior to a home drug screen,[12] Mother expressed that she did not want to take the test because she would test positive for alcohol. During this time, Mother also failed to report at all for numerous drug screens. Furthermore, during the course of the termination proceeding, Mother was involved in a domestic dispute with boyfriend and admitted to the responding police officer that she had been drinking prior to the incident. Substantial and independent evidence in the record reflects Mother's continued alcohol abuse. Therefore, if any error occurred, it was harmless.

---

[12] Hi-Tech made arrangements to conduct Mother's drug screens at her home during winter months when the weather was bad.

## Conclusion

[28] This is a heartbreaking situation where Mother and Children appear to be bonded. Although Mother attempted to engage in services as the likelihood of termination loomed, the record is clear that Mother still struggles with substance abuse issues, continues to demonstrate violent and erratic behavior, and has no stable employment to support Children. Applying our highly deferential standard of review, we conclude that sufficient evidence supports the trial court's judgment terminating Mother's parental rights to Children. In addition, the trial court did not abuse its discretion in admitting Mother's positive drug screens. Even if admission of the positive drug screens was in error, such error is harmless in view of the facts and circumstances before us.

[29] Affirmed.

Vaidik, C.J., and Barnes, J., concur.